Jose MACEDO, Plaintiff, Appellee,

v.

F/V PAUL & MICHELLE, Defendant, Appellant.

No. 88–1898.

United States Court of Appeals, First Circuit.

Heard Feb. 8, 1989.

Decided Feb. 28, 1989.

---

Thomas J. Muzyka with whom Clinton & Muzyka, P.C., Boston, Mass., was on brief, for defendant, appellant.

Linda E. Abrahams with whom Flannery & Ansel, Boston, Mass., was on brief, for plaintiff, appellee.

Before BREYER, ALDRICH and SELYA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This is an action for maintenance and cure, unique in its facts. Plaintiff, a Banks fisherman, home between trips, was injured on a pleasure jaunt on a Sunday. The court awarded him maintenance for 38 weeks at the rate of $40 a day, or $10,640, and for cure, $5,320, being 20% of his hospital and doctor's bills. Three questions are presented: whether plaintiff was entitled to maintenance and cure at all; whether, if so, he was entitled to $40 a day; and, finally, whether he was entitled to reimbursement for hospital and medical expense.

With respect to plaintiff's basic entitlement, defendant argues at length that, during his shore stay between trips, plaintiff was not in the service of the ship, a requirement for maintenance. If, conceiva-

bly, this could have presented a question had the union contract been in effect, it was answered in plaintiff's favor by the court's clearly warranted finding. At this time there was a general strike and those who continued to fish were so unpopular that they risked physical danger. While the captain had told plaintiff that they would sail on Tuesday, preparatory work to be done Monday, the court found that with the contract not in effect, the captain could have changed his mind and decided to sail Monday and required plaintiff to do the preparatory boat work Sunday, holiday or not. Defendant's extensive argument seeking to overcome this finding of plaintiff's being on call is far off the mark and frivolous.

■■■ The obligation for maintenance and cure arose, historically, from the irresponsible behavior of shipowners who set disabled seamen ashore at foreign ports to shift for themselves. In *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), the Court was presented "for the first time [with] the question of the existence and scope of the shipowner's duty when the seaman is injured while on shore leave but without specific chore for the ship." *Id.* at 733, 63 S.Ct. at 935. It answered as follows.

We think that the principles governing shipboard injuries apply to the facts presented by these cases. To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage.

. . . .

The voyage creates not only the need for relaxation ashore, but the necessity that it be satisfied in distant and unfamiliar ports. If, in those surroundings, the seaman, without disqualifying misconduct, contracts disease or incurs injury, it is because of the voyage, the shipowner's business. That business has separated him from his usual places of association.

*Id.* at 733–34, 63 S.Ct. at 935–36. Perhaps not unnaturally, although the special reasons for its creation did not apply, once established the obligation was extended to seamen ashore at home. And, just as when in a foreign port, the liability attached even though the seaman was not, strictly, engaged in the service of his ship at the moment, *Warren v. United States*, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951) (seaman fell from window of a dance hall), seamen at home were held entitled if, at the time of the disabling occurrence, they were generally on call, as distinguished from on a totally free holiday. In arguing that fishermen are not "blue water" seamen, defendant is trying to reverse history as well as factual findings. *See Hunt v. The Trawler Brighton, Inc.*, 102 F.Supp. 300 (D.Mass.1952); *cf. Keeping v. Dawson*, 262 F.2d 868, 870–71 (1st Cir.1959) (*Hunt* distinguished because plaintiff not on call).

■■■ The amount of the award, however, presents more substantial questions. The union contract specified, "Maintenance and Cure of $10 per day shall be paid to any man who is qualified under the Federal Maritime Law." The court found,

The defendant has not proved that the agreement continued in force.... The defendant did continue to observe some but not all provisions of the agreement. I find that the provisions [sic] of the agreement limiting maintenance to $10 per day was not proved to be in force on March 23, 1986.

This was oversimplistic. The provisions with respect to sailing dates were no longer in effect, but it was uncontradicted that the provisions with regard to payments had been strictly observed. Defendant continued to make the 2½% contribution to the New Bedford Fishermen's Welfare Fund, from which plaintiff received medical benefits, and the 2½% contribution to the pension plan, and maintained the same settlement of 36% for the boat and 64% for the crew, keeping the settlement sheets pursuant to the contract. It is to be borne in mind that percentage settlements are, in effect, a partnership. These particular figures were interrelated, a relationship violated by the court's changing the $10 a day to $40. While findings of fact are entitled to great respect, we see no basis for mak-

ing this single change in what had been recognized as a unified whole.

■ A more serious question, although not argued, might be asked as to whether the agreed daily rate is in fact binding when it is, in the particular case, insufficient to meet the actual requirements of daily maintenance. In *Vaughan v. Atkinson,* 369 U.S. 527, 532–33, 82 S.Ct. 997, 1000–01, 8 L.Ed.2d 88 (1962), the Court repeated a dictum from *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932), that while maintenance and cure "has its source in a relation which is contractual in origin ... no agreement is competent to abrogate the incident." *Vaughan*'s statement also was dictum—in neither case had there been a waiver agreement. More recently the court in *Gardiner v. Sea–Land Service, Inc.,* 786 F.2d 943 (9th Cir.1986), considered this dicta not to be binding in the changed circumstances of a collective bargaining agreement, and held that the there agreed daily rate of $8 should be respected. *See also Incandela v. American Dredging Co.,* 659 F.2d 11, 13 (2d Cir.1981), where the court rejected the union rate because plaintiff was not a union member. An attempt to limit an individual seaman in this important right would be contrary to the principles on which it was established. Collective bargaining agreements—highly approved generally—present a quite different question. A union representing fishermen who, when they are ashore, are at home and not adrift at some foreign port, might recognize this circumstance and prefer to emphasize the settlement payments. We hold this acceptable. Plaintiff's maintenance stands at $10.

■ We might add that the court's largesse was singularly conspicuous. Plaintiff's wife testified that the fair rental expense for her husband and herself was $80 a week, with utilities at $80 a week, and with food at $120 a week. Passing the fact that $80 a week seems extraordinary for utilities, the court added these figures without deduction for the proportion attributable for the wife's keep, or even for her board, and awarded the full $280. Maintenance and cure is strictly personal, not family support. Even though the wife sought to say she was a light eater, there was no basis for this generosity.

■ As to medical expense, while plaintiff's counsel produced the bills, plaintiff testified that he did not recall the amounts, and that he had paid nothing, but he believed the union paid only 80%. The union representative testified, without impeachment, that bills for union members were paid 100%. The union representative, presumably familiar with the practice, was surely impartial, and if she was mistaken it should have been easy to show it. When, a year after the service was performed, plaintiff admittedly had paid nothing, we do not think his mere unsupported belief that the union took care of only part of the bills sufficient to warrant a finding.

Both parties dispute the correctness of the 38 weeks; defendant considering the period excessive, and plaintiff insufficient. Plaintiff did not appeal. We have no interest in disturbing this finding.

The judgment below is modified to provide for $2,660 for maintenance, with nothing for "cure." The court did not award interest, but maintenance is an important current obligation and should carry it. We add interest to date in the amount of $600. As modified, the judgment is affirmed. No costs.