**Robert BROWN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 93 Civ. 5904 (LAK).**

United States District Court,
S.D. New York.

April 28, 1995.

Gerald P. Goldsmith, New York City, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Washington, DC, Mary Jo White, U.S. Atty., Janis G. Schulmesiters, Atty. in Charge, Arthur J. Gribbin and Jack S. Rockafellow, New York City, for defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is a seaman's action for personal injuries, lost earnings, maintenance and cure. Plaintiff previously moved for an order setting reasonable maintenance to be paid to plaintiff in the event he needs additional surgery at $50 per day. The defendant contended that the amount of maintenance was fixed at $8 per day by the Seafarers International Union Standard Tanker Agreement, effective June 16, 1990—June 15, 1993 (the "Tanker Agreement") and that the Tanker Agreement superseded any right under the general maritime law to maintenance in a greater amount. Inasmuch as the defendant failed to submit any evidence that either plaintiff or defendant was covered by the Tanker Agreement, I ruled that plaintiff was entitled to maintenance in the amount of $36.67 per day in the circumstances described. *Brown v. United States,* 1995 WL 49266 (S.D.N.Y. Feb. 8, 1995).

The defendant moves for reargument under S.D.N.Y. Civ.R. 3(j) or for relief from my previous ruling under FED.R.CIV.P. 59(e). It has established by its recent submission that the vessel on which plaintiff served, the S.S. BUYER, was owned at the relevant time by the United States Maritime Administration ("MARAD"), that it was operated by OMI Ship Management, Inc. ("OMI") as general agent for the United States, that OMI was signatory to the Tanker Agreement, and that plaintiff was hired through a hiring hall of the Seafarers International Union pursuant to the Tanker Agreement.

■ While it is debatable whether defendant has moved pursuant to the appropriate rules,[1] FED.R.CIV.P. 54(b) provides in substance that the court may reconsider any order prior to the entry of final judgment. As plaintiff does not object to reconsideration, although he of course asks that I adhere to my prior ruling, I will consider the issue in light of the applicability of the collective bargaining agreement.

As noted in my prior ruling, the four circuits that have ruled on this point are divided. *Compare Barnes v. Andover Co.,* 900 F.2d 630 (3d Cir.1990) (collective bargaining agreement not controlling) with *Al–Zawkari v. American S.S. Co.,* 871 F.2d 585 (6th

---

1. A motion for reargument under Rule 3(j) lies only to invite the court's attention to "matters or controlling decisions which counsel believes the court has overlooked" in deciding a motion. No affidavits are permitted absent leave of court. Thus, a Rule 3(j) motion is not an appropriate vehicle for a party to remedy deficiencies in its own submissions, as the defendant seeks to do here. It is questionable too whether Rule 59(e) applies, as there is no judgment to alter or amend.

Cir.1989); *Mercedo v. F/V Paul & Michelle*, 868 F.2d 519 (1st Cir.1989); *Gardiner v. Sea–Land Service, Inc.*, 786 F.2d 943 (9th Cir.), *cert. denied*, 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986) (collective bargaining agreement controlling).

The majority view flows from the divided decision in *Gardiner*. The Ninth Circuit there held that deferral to the rate fixed in the collective bargaining agreement was an appropriate accommodation between maritime law and national labor policy, at least in the absence of reason to believe that the collective bargaining process was unfair or that the rate of maintenance was not subject to real negotiation. 786 F.2d at 948–49. The Sixth Circuit in *Al–Zawkari* followed the Ninth, with the added caveat that the right to maintenance cannot be abrogated by contract. 871 F.2d at 588. The First Circuit in *Mercedo* decided the question without articulating its reasons beyond saying that the result was acceptable. 868 F.2d at 521.

In *Barnes*, on the other hand, the Third Circuit took a different approach. It began from the premise that maintenance, while incident to a contractual relationship, is not contractual in nature and therefore not subject to abrogation by contract. 900 F.2d at 636, *citing Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). It noted the Supreme Court's "long-established solicitude for seamen." 900 F.2d at 636. It pointed out that there is a fundamental inconsistency between saying, as the Supreme Court has done, that the right to maintenance cannot be abrogated contractually and adopting a rule that would bind courts to recognize contractual rates of maintenance that are so inadequate as to amount to the same thing. *Id.* at 637. It therefore concluded that any departure from the traditional scope of maintenance in maritime law, even to accommodate national labor policy, must be the product of Congressional rather than judicial action. *Id.* at 644. *See also Gillikin v. United States*, 764 F.Supp. 261 (E.D.N.Y.1991).

Some consideration of economic reality bears on this question, and the economic reality does not cut unambiguously in one direction. The *Gardiner* majority surely is correct in saying that the collective bargaining process involves give and take between employers and the union on a total package of wages and benefits. In ordinary circumstances, one cannot ignore the virtual certainty that the absence or low level of a particular benefit for some or all employees is offset by an economic benefit elsewhere in the package. Thus, it is fair to assume that plaintiff, although saddled (if the contract prevails) with a low rate of maintenance, benefited from higher wages or better benefits as a result of the contractual limit on maintenance payments. This cuts in favor of a policy making the union contract controlling on this issue.

But there are at least two countervailing considerations. The first is the obvious fact that no reasonable person could even suggest that $8 is sufficient to pay for the costs that maintenance is designed to pay. If the contract were held to be controlling, there simply is no denying that the contractual rate is so low that the right to maintenance effectively has been abrogated.

■ The second arises from the significance of the contractual rate of maintenance to the union leadership and rank and file. Unlike wages, maintenance is payable only to those union members who become ill or injured in the service of the ship. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938). In consequence, wages and certain benefits are important to everyone whereas the rate of maintenance is something that most union members probably never expect to confront. In such circumstances, it would not be unreasonable for the union to place primary emphasis on allocating the sum total of economic benefit available from the employers heavily in the direction of wages and other benefits payable to all members at the expense of benefits payable only to a few, particularly where most of the few—those who will become ill or injured in the future—cannot be identified. The constituency within the union for a higher maintenance rate may well be limited at best.

■ These considerations arguably point in the direction of holding that a collective

bargaining agreement properly may set a floor under the rate of maintenance, but may not effectively impose a ceiling on it. But the critical point, in my view, is that it is not up to the courts to decide these issues, which implicate national labor policy and involve economic assessments of a sort that courts are not best equipped to make. In consequence, I agree in substance with the Third Circuit's view in *Barnes*. Courts have an established role in protecting seamen under the general maritime law. That role long antedates even the existence of a national labor policy and of collective bargaining. If the law of labor relations is to supplant that judicial role, it is for Congress to say so.

Accordingly, defendant's motion for reconsideration is granted. On reconsideration, however, I adhere to my original ruling: plaintiff is entitled to maintenance in the amount of $36.67 per day in the event he needs additional surgery to his injured leg.

SO ORDERED.