**In re The Matter of COOPER/T. SMITH STEVEDORING COMPANY, INC., as Owner and Operator of the M/V Captain Jack, Praying for Exoneration From and/or Limitation of Liability.**

**Civil Action No. 95–3312.**

United States District Court,
E.D. Louisiana.

Oct. 8, 1996.

John Links Duvieilh, Richard D. Bertram, Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, LA, for petitioner.

Julian R. Murray, Jr., Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, J. Mac Morgan, Law Office of J. Mac Morgan, New Orleans, LA, for claimant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

FALLON, District Judge.

Before this Court is a claim for maintenance and cure which was severed from the main demand with the consent of the parties and tried to the Court.

### BACKGROUND:

Plaintiff, Richard F. Tierney, Jr., was employed by defendant, Cooper/T. Smith Stevedoring Company, as a line handler. He was assigned to work aboard a fleet of small line handling vessels owned, operated, and controlled by defendant, Cooper/T. Smith Stevedoring Company. These vessels were used in connection with handling ship and barge lines. The crew aboard these line handling vessels secured and removed lines from docks, vessels, and anchor buoys.

On May 13, 1995, plaintiff, Richard F. Tierney, was working aboard one of the line handling vessels, namely, the M/V CAPTAIN JACK. The vessel was in the Mississippi River in the vicinity of the International-Maytex Tank Terminals. While in the course and scope of his employment, the plaintiff injured his back when removing a barge cable from an anchor buoy.

The defendant sent the plaintiff to Dr. Robert Steiner, an orthopedist. Dr. Steiner first saw Richard F. Tierney, Jr. on May 17, 1995. Following his examination and diagnostic tests, Dr. Steiner concluded that the plaintiff's complaints and findings were suggestive of either a sacroiliac strain or a pinched nerve in the lumbar regions, pre-

sumably from a ruptured intervertebral disc at the L5–S1 level. A subsequent MRI confirmed a disc extrusion at this level (see Steiner Deposition, pp. 16, 19). Dr. Steiner continued to treat the plaintiff through August 31, 1995.

In August of 1995, the plaintiff decided to select a physician of his own choosing and began seeing Dr. John Watermier. Following his initial examination, Dr. Watermier concluded that the plaintiff had a lumbar herniated disc syndrome or a sacroiliac syndrome, or possibly even both problems at the same time (see Watermier Deposition p. 12). While under the care of Dr. Watermier, the plaintiff underwent a number of diagnostic tests, including an EMG, a sacroiliac block, and a CT Scan. As a result of these tests, Dr. Watermier diagnosed the plaintiff's condition as a sacroiliac joint syndrome (see Watermier Deposition p. 21).

Both doctors agree that Mr. Richard Tierney, Jr. received an injury to his lumbar region. Nevertheless, Dr. Steiner believes the injury is a ruptured disc at the L5–S1 level. He specifically rules out an injury to the sacroiliac joint (Steiner Deposition, p. 21). Dr. Watermier, on the other hand, concludes that the plaintiff sustained an injury to his sacroiliac joint (Watermier Deposition p. 21).

According to Dr. Steiner, the appropriate treatment would be a laminectomy and a dissectomy at L5–S1 (Steiner Deposition p. 25). Dr. Watermier believes the appropriate treatment would be surgical intervention at the sacroiliac joint. This would involve removing some soft tissue and muscle around the joint, cutting a hole in the joint to scrape out some cartilage, and putting new bone into the joint to fuse it or weld it to the existing bone (Watermier Deposition, p. 22).

The plaintiff seeks maintenance payments and the cost of the medical treatment prescribed by Dr. Watermier, his physician of choice.

The defendant, on the other hand, argues that the plaintiff has reached maximum medical improvement and that either operation would simply alleviate the plaintiff's pain and be only palliative in nature. In the alternative, defendant submits that if plaintiff has not reached maximum cure, and if an operation is necessary to improve his capability, the procedure prescribed by Dr. Steiner is the appropriate treatment.

Thus, the issue before the Court is whether or not the plaintiff, Richard F. Tierney, Jr., has reached maximum medical improvement and, if he has not, which surgical procedure—the one suggested by Dr. Steiner or the one suggested by Dr. Watermier—is necessary and, therefore, included within the maritime concept of cure.

### APPLICABLE LAW:

■ A ship owner who employs seamen has an obligation to care for them if they are injured or become ill while in the service of the vessel. This concept appears in the medieval sea codes and is undoubtedly of the even earlier origin. *See* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6–28 (2d ed.1994). In the United States, this duty of the vessel owner, which has become known as "maintenance and cure," is encompassed in the general maritime law. Maintenance is the right of a seaman to food and lodging if he falls ill or becomes injured while in the service of the ship. Cure, on the other hand, is the right to "necessary medical expenses." *Id.* at 348.

■ For many years, seamen on United States documented vessels received free medical care in the United States Public Health Service Hospitals, but these were closed in the 1980's. Now, many seamen receive medical benefits through insurance or through union membership. If, as in the present case, a seaman is not a member of the union or the expenses are not paid for under the Union's insurance plan, the expenses must be paid by the employer. *See Caulfield v. A C & D Marine, Inc.,* 633 F.2d 1129 (5th Cir.1981); *Macedo v. F/V Paul & Michelle,* 868 F.2d 519 (1st Cir.1989). A court should scrutinize carefully the medical expenses incurred to determine whether they are both bonafide and reasonable. *See Naviera Maersk Espana v. Cho-Me Towing, Inc.,* 782 F.Supp. 317 (E.D.La.1992). The seaman has a right to be treated by the physician of his choice but cannot be reimbursed for overly expensive or unnecessary medical services. *Rodriguez Alvarez v. Bahama Cruise Line,*

*Inc.,* 898 F.2d 312 (2nd. Cir.1990). The employer has the burden of showing that treatment is excessive. *Id.* at 315; *see also Caulfield,* 633 F.2d at 1133; *Turner v. Inland Tugs Company,* 689 F.Supp. 612 (E.D.La. 1988).

The obligation to pay maintenance and cure continues until the seaman is cured or, if there is a *permanent impairment,* until he reaches the point of maximum medical recovery. *Farrell v. United States,* 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949). The test for maximum medical recovery is "when it appears probable that further treatment will result in no betterment of the seaman's condition." In the case of permanent injury, maintenance and cure continues until the seaman's incapacity is diagnosed as being permanent. *Vella v. Ford Motor Co.,* 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); *Desmond v. United States,* 217 F.2d 948 (2nd Cir.1954), *cert. denied,* 349 U.S. 911, 75 S.Ct. 600, 99 L.Ed. 1246 (1955); *Vitco v. Joncich,* 130 F.Supp. 945 (S.D.Cal.1955), *aff'd,* 234 F.2d 161 (9th Cir.1956). Where future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved. *Pelotto v. L & N Towing Co.,* 604 F.2d 396 (5th Cir.1979).

### CONCLUSION:

It is not contested that plaintiff, Richard F. Tierney, Jr., was a seaman or a member of the crew of the M/V CAPTAIN JACK at the time of his injury. *Chandris, Inc. v. Latsis,* — U.S. —, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *McDermott Internat'l, Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). He is entitled, therefore, to receive maintenance and cure from his employer, the owner of the vessel, until he reaches maximum cure.

Either the laminectomy suggested by Dr. Steiner or the fusion suggested by Dr. Watermier would increase the plaintiff's physical capabilities and thus improve his physical condition. (See Steiner Deposition, p. 25; Watermier Deposition, p. 46). Accordingly, the Court finds that plaintiff, Richard F. Tierney, Jr., is not now cured and he has not yet reached maximum cure. Therefore, he is entitled to receive maintenance payments from his employer as well as the cost of reasonable and necessary medical expenses. *Rodriguez Alvarez v. Bahama Cruise Line, Inc., supra.*

The question that remains is what is the appropriate, necessary, and reasonable medical treatment required by the plaintiff? Because of the divergent views of the two experts, the Court, pursuant to Rule 706 of the Federal Rules of Evidence, appointed Dr. Edmond C. Landry, Jr. to serve as a court-appointed expert in the field of orthopaedic surgery. Dr. Landry examined the plaintiff, Richard F. Tierney, Jr., and reviewed all of Mr. Tierney's medical records. Dr. Landry concluded that the plaintiff's physical findings and diagnostic studies all point to a symptomatic problem of herniation of the L5–S1 intervertebral disc. Dr. Landry further concluded that surgical intervention would be appropriate if the patient so elects. The surgical intervention suggested by Dr. Landry is a laminectomy. Dr. Landry's findings and conclusions are supported by the credible evidence in the case.

Accordingly, the Court finds that the defendant, Cooper/T. Smith Stevedoring Company, is responsible for the cost of a laminectomy, which, based on the evidence, is reasonable and necessary to treat his condition.

This decision constitutes the findings of fact and conclusions of law required under Rule 52 of the Federal Rules of Civil Procedure. To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such, and, likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.