Edgar SHARP, Plaintiff,

v.

STOKES TOWING COMPANY, INC., Defendant.

No. 4:96CV84–S–B.

United States District Court,
N.D. Mississippi,
Greenville Division.

Jan. 13, 1998.

J. Murray Akers, Greenville, MS, J. Arthur Smith, III, Baton Rouge, LA, James M. Patton, Birmingham, AL, for Plaintiff.

Frank John Dantone, Jr., Joel J. Henderson, Edward Duncan Lamar, Greenville, MS, for Defendant.

## OPINION

SENTER, Chief Judge.

This cause is before the court upon post-verdict motions by both the defendant and the plaintiff. A jury trial was held on May 18, 19, and 20, 1997, on the admiralty claims of the plaintiff. At the conclusion of the trial, the jury returned verdicts in favor of the defendant on the plaintiff's claims of Jones Act negligence, of unseaworthiness, and for damages and attorneys' fees for willful failure to pay maintenance and cure. However, the jury found that the plaintiff was due additional maintenance and cure and awarded him $50,000.

## FACTS

On February 4, 1996, Edgar Sharp was employed as a seaman by Stokes Towing Company on board the M/V CINDY CELESTE which was navigating the Mississippi

River. The Cindy Celeste encountered severe weather conditions including snow and ice during its journey down the river from Cincinnati, Ohio. When the vessel stopped in Rosedale, Mississippi on February 4, 1996, it added several barges to its tow. Due to an ice storm in Mississippi, the added barges also had ice and snow on them. As he was setting out navigational lights, seaman Sharp fell on one of the barges and, as a result, sustained injuries to his back. Sharp was examined by several doctors who confirmed that Sharp had suffered an injury.

### PLAINTIFF'S MOTIONS

Sharp filed a motion for partial new trial as well as a motion to file supplemental memorandum in support of the motion for a partial new trial with respect to the issues of Jones Act negligence, unseaworthiness, and damages and attorneys' fees for failure to pay maintenance and cure.

A court may grant a losing party's motion for a new trial if the jury's verdict is against the great weight of the evidence. *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir.1980). "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.* "Factors militating against new trials in such cases are (1) simplicity of the issues, (2) the degree to which the evidence was in dispute, and (3) the absence of any pernicious or undesirable occurrence at trial." *Id* . "When all three factors are present, [the court's] deference to the jury is reinforced by our confidence in its ability to understand the issues, to evaluate credibility and sort through conflicting testimony, and to act reasonably and fairly in the absence of prejudicial influences." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 931 (5th Cir.1982).

Sharp argues that the jury either disregarded evidence or failed to follow the Court's instructions as to the law in regard to Jones Act negligence.[1] According to Sharp, the en banc decision of *Gautreaux v. Scur-*

*lock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)(en banc), did not affect the state of the law in this circuit regarding employer liability under the Jones Act. Sharp maintains that Stokes Towing was negligent when it failed to apply rock salt to the decks. The evidence at trial established that the Cindy Celeste normally carried a load of rock salt but had run out on the day of the accident; that the captain and ship log stated that the crew of the Cindy Celeste was working in "extremely hazardous" weather conditions; and that the captain had an opportunity to purchase rock sale in Memphis but failed to do so.

The primary issue in *Gautreaux* was determination of the duty of care for Jones Act employees in the exercise of their own safety. Settled law in the Fifth Circuit had established the standard of care for a seaman as "slight" rather than the reasonably prudent person standard. However, in *Gautreaux* the court did not limit its holding solely to the standard of care for seaman. Because the "slight care" standard for a seaman developed as a result of tortured construction of statutory language establishing the employer's liability to the seaman, out of necessity, the court additionally reconsidered the degree of negligence for the Jones Act employer. As the jury was properly instructed in the case at bar, a seaman is entitled to recover under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury. *Gautreaux* explains that the language "in whole or in part" (later translated into "slightest") modifies causation and not negligence. *Id.* at 335. "[T]he word 'slightest,' used initially to refer to the quantum of evidence of an employer's breach of duty necessary to sustain a jury verdict, soon took on a different referent." *Id.* Through the years, "in whole or in part" became "slight negligence" and "slight care." *Id.* In reaching its holding, the en banc court repeatedly asserted that they were overruling cases contrary to the principles embraced in the opinion. *Id.* at 332, 339. *Gautreaux* states:

1. The court instructed the jury, "Under the Jones Act, if the employer's negligent act or omission played any part, no matter how small, in actually

causing the plaintiff's injury, then you must find that the employer is liable under the Jones Act."

A seaman, then, is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard, therefore, and a Jones Act negligence action becomes one of the reasonable *seaman* in like circumstances...Moreover, by attributing to Jones Act employers a higher duty of care than that required under ordinary negligence, *Allen* and its progeny repudiate the reasonable person standard and are also overruled.

*Id.* at 339. Thus, the plaintiff incorrectly argues that the degree of negligence of the Jones Act employer remains "slight" rather than "ordinary" after *Gautreaux.*

■ The evidence established that the crew was working in extremely hazardous weather conditions due to the unusual ice storm occurring in Mississippi. Further, the plaintiff testified under oath that it would not be practical to salt down every passageway on the tow. The plaintiff argues that Stokes Towing should be held liable for not having purchased rock salt in Memphis and for depleting its supply of rock salt on the day of the accident. The jury heard the evidence and did not find that Stokes Towing had acted negligently. All reasonable efforts should be made to uphold the verdict because of the deference due to the jury's factual findings. *Evans v. H.C. Watkins Memorial Hospital, Inc.,* 778 F.2d 1021, 1022 (5th Cir. 1985). This court does not find that the jury verdict is against the great—not merely the greater—weight of evidence. The jury determined that Stokes Towing exercised ordinary prudence in its duty of care owed to seaman Sharp under the Jones Act. This court finds no support for a contrary conclusion.

Sharp argues that the finding of the jury that the Cindy Celeste and the barge upon which Sharp fell were seaworthy to be in error. He argues that the case of *Webb v. Dresser Industries,* 536 F.2d 603 (5th Cir. 1976), *cert. denied* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977), supports the

contention that under the doctrine of unseaworthiness, a shipowner may be held liable for ordering a seaman to work in conditions of ice and snow without providing the necessary appliances, gear, and equipment. According to Sharp, the decks and passageways were not reasonably safe because of the ice and snow and, therefore, Stokes Towing is liable as a matter of law. Sharp's support for his proposition involves a ship conducting oceanic surveying in Alaskan waters in the wintertime.

■ The Doctrine of Unseaworthiness provides that employers have a non-delegable duty to provide a vessel which is reasonably fit for its intended use. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960); *Webb v. Dresser Industries,* 536 F.2d 603. The jury found that the Cindy Celeste was reasonably fit for its intended purpose. Once again, the jury's finding is not against the clear weight of the evidence. At the time of the accident, the Cindy Celeste encountered extraordinary weather conditions in southern waters. Unlike a ship navigating Alaskan waters, a shipowner in port in Mississippi would not necessarily expect to encounter "extremely hazardous" weather conditions resulting in ice and snow. "All the evidence must be viewed in a light most favorable to the jury's verdict, and that the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the Court believes that reasonable persons could not arrive at a contrary conclusion." *Dawson v. Wal–Mart Stores, Inc.,* 978 F.2d 205, 208 (5th Cir.1992). The plaintiff's motion for a partial trial based upon the doctrine of unseaworthiness is denied.

Sharp contends that the jury erred when it declined to award compensatory damages and attorneys fees for failure of Stokes Towing to pay maintenance and cure after October 6, 1996. According to Sharp, Stokes discontinued maintenance and cure on October 6, 1996 "with no evidence that Edgar Sharp had reached maximum cure." Sharp further contends that Stokes Towing had originally paid $27.00 per day in maintenance but reduced the daily amount to $15 per day when Sharp hired an attorney. Sharp ar-

gues that it was unreasonable and arbitrary for Stokes to reduce the daily stipend after Sharp hired a lawyer and for Stokes to cease maintenance and cure payments on October 6, 1996.

 Maintenance and cure is a seaman's right under general maritime law to receive food and lodging (maintenance) and necessary medical services (cure) if he falls ill while in the service of a vessel. *Davis v. Odeco Inc.,* 18 F.3d 1237 (5th Cir.), 513 U.S. 819, 115 S.Ct. 78, 130 L.Ed.2d 32 (1994). A seaman's right to maintenance and cure is implied in the employment contract between the seaman and shipowner, and terminates only when "maximum cure has been obtained". *Bertram v. Freeport McMoran, Inc.,* 35 F.3d 1008, 1012 (5th Cir.1994). A shipowner is liable to pay maintenance and cure until the point of maximum medical cure, where it is probable that further treatment will result in no betterment in the claimant's condition. *Springborn v. American Commercial Barge Lines,* 767 F.2d 89, 95 (5th Cir.1985). In *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the Supreme Court held that an employer's willful and arbitrary refusal to pay maintenance and cure gives rise to a claim for damages in the form of attorneys' fees in addition to the claim for general damages. There is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. *Galveston County Nav. District. v. Hopson Towing Co., Inc.,* 92 F.3d 353, 358 (5th Cir. 1996). If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. *Id.* If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well." *Id.*

 Sharp maintains that he had not reached maximum cure when the payments were terminated. The testimony at trial revealed that David Stokes, owner of Stokes Towing, ceased the maintenance and cure payments after he viewed surveillance tapes showing the plaintiff working on a construction site and performing heavy labor. Because the plaintiff represented that he was incapable of returning to work for Stokes Towing, David Stokes believed that Sharp had reached maximum cure. The jury found that David Stokes had acted reasonable under the circumstances and awarded maintenance and cure of $50,000 but declined to award further damages. This court does not find that the jury erred in making this finding and, accordingly, denies the plaintiff's motion.

## THE DEFENDANT'S MOTION

Stokes Towing filed a renewal of its motion for judgment as a matter of law, or, in the alternative, a motion for reduction of the verdict or new trial. Stokes argues that the plaintiff failed to produce sufficient evidence to show that he was entitled to additional maintenance and cure. Alternatively, Stokes argues that it should be granted a remittitur on the basis that the verdict is excessive and is either the result of bias or prejudice, the jury's misunderstanding of the law, or not supported by the evidence. Finally, Stokes moves for a new trial in the event the court denies the motion for judgment as a matter of law and the motion for remittitur.

Because juries are to be the determiner of fact when reasonable men could differ on the conclusions to be reached from the evidence, a rule 50(b) motion should be considered by viewing all the evidence and the reasonable inferences in the light most favorable to the party against whom the motion is made. Even though the court may not weigh the evidence, decide the credibility of witnesses or substitute its judgment for that of the jury, the district court may grant the Rule 50(b) motion when only one reasonable conclusion exists. *Brock v. Merrell Dow Pharmaceuticals, Inc.,* 874 F.2d 307 (5th Cir.1989) *modified by* 884 F.2d 166, *cert. denied* 494 U.S. 1046, 110 S.Ct. 1511, 108 L.Ed.2d 646 (1990). Stokes asserts that it is entitled to judgment as a matter of law on the basis that the medical treatments left unpaid by the plaintiff were palliative in nature rather than

curative[2] and that the plaintiff did not sustain his burden of proving that he incurred maintenance expenses.

 Maximum cure is reached when it is probable that further treatment will result in no betterment of the claimant's condition, or until the seaman's incapacity is diagnosed as being permanent. V*ella v. Ford Motor Co.*, 421 U.S. 1, 5, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975); *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996). The plaintiff concedes that "where future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *In re the Matter of Cooper/T.Smith Stevedoring Company, Inc.*, 942 F.Supp. 267 (E.D.La.1996). There was no definitive proof entered into evidence that Sharp had reached maximum cure or, conversely, that he had not reached maximum cure. In regard to the maintenance expense, Sharp did provide evidence of living expenses. "A seaman's burden of production in establishing the value of his maintenance is feather-light: his own testimony as to reasonable costs of room and board in the community where he is living is sufficient to support an award." *Yelverton v. Mobile Laboratories, Inc.*, 782 F.2d 555 (5th Cir. 1986). The amount apportioned to maintenance is a question of fact for the jury. *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129 (5th Cir.1981). As the plaintiff correctly points out, maintenance is not necessarily an easily discernable figure:

> Actual expenses do not always provide a satisfactory benchmark, because in many cases a seaman my not have sufficient funds to obtain the kind of maintenance which the law provides for him. for want of means, he may spend very little, simply because he is unable to fend for himself...The fact that a seaman is actually able to live on a pittance, however, does not limit him to that recovery, nor does it establish that he was provided with adequate living conditions during his recovery.

*McWilliams v. Texaco, Inc.*, 781 F.2d 514 (5th Cir.1986). The jury considered the evidence including Sharp's testimony regarding living expenses and awarded the plaintiff $50,000 for maintenance and cure. The defendant's motion for judgment as a matter of law is denied.

 This court further finds that the defendant's motion for a remittitur as well as the motion for a new trial are not well taken. The defendant submits that the proper amount, if any, to have awarded for maintenance and cure was at most $12,522.67 while the plaintiff argues that the proper amount to have awarded was $89,127.67. Again, because there was no definitive proof as to whether Sharp had reached maximum cure, the court finds the motion of the defendant is not well taken. Regarding the contention of the defendant that the verdict was excessive, this court notes that maritime law provides that future cure payments may be awarded. Clearly, in reaching the amount to award Sharp for maintenance and cure the jury considered future cure payments. Finally, despite the inconsistency of the calculations for maintenance and cure by the parties, the court is not persuaded to grant the motion for a new trial. The mere fact that evidence is conflicting is not enough to set aside the verdict and order a new trial. *Dawson v. Wal–Mart Stores, Inc.*, 978 F.2d 205, 208. "Indeed the more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury." 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2806 (1995).

For all the reasons stated above, this court finds all post-verdicts motions, including the plaintiff's motion to file supplemental memorandum, be denied. An order shall be issued contemporaneously with this opinion.

### ORDER DENYING POST–VERDICT MOTIONS BY THE PLAINTIFF AND BY THE DEFENDANT

In accordance with a memorandum opinion issued concurrently,

---

**2.** General maritime law requires the shipowner to pay for curative medical procedures rather than palliative medical treatment. *Stanovich v. Jurlin*, 227 F.2d 245, 246 (9th Cir.1955). pallia-tive treatments refer to medical treatments which go to the reduction of pain or intensity without curing the underlying problem.

IT IS ORDERED:

That plaintiff's motion for a partial new trial is denied;

That plaintiff's motion to file supplemental memorandum in support of his motion for partial new trial is denied;

That defendant's motion for judgment as a matter of law is denied; and,

That defendant's motion for reduction of the verdict or for a new trial is denied.