[No. 39419-3-I.   Division One.   February 9, 1998.]
JOHN LUNDBORG, *Appellant*, v. KEYSTONE SHIPPING COMPANY, *Respondent*.

---

[7]*Davison*, 116 Wn.2d at 920.

[8]*State v. Hunotte*, 69 Wn. App. 670, 676, 851 P.2d 694 (1993).

*John W. Merriam*, for appellant.

*Robert J. Bocko* and *Philip R. Lempriere*, for respondent.

GROSSE, J. — The right of an individual injured or ill seaman to maintenance cannot be abrogated by private agreement. By definition, maintenance is based on the injured seaman's actual expenses for food and lodging, and, accordingly, a collective bargaining agreement that provides for an $8 per diem, without an opportunity to allow the injured seaman to recover based on actual expenses, abrogates the right to maintenance.

John Lundborg served on the SS *Keystone Rhode Island*, an oceangoing oil tanker, as a relief able seaman. Lundborg's employer and operator of the SS *Keystone Rhode Island* is Keystone Shipping Company (Keystone). Lundborg injured his ankle on duty and he left the ship in Portland, Oregon, at the end of the ship's voyage. He was certified fit for duty after 24 days and received $192 in maintenance. Keystone paid him at the rate of $8 per day based on the maintenance rate established in the collective bargaining agreement between the National Maritime Union and Keystone. On summary judgment, the trial court dismissed Lundborg's claims for maintenance and unearned wages.

■ Lundborg claims Keystone provided him with inadequate maintenance during the time he was injured. Maintenance is the duty of a ship owner to provide food and lodging to a seaman who falls ill or becomes injured while in the service of the ship.[1] It is a per diem allowance paid during the time of recovery based on prices in a particular area and is meant to provide food and lodging comparable to that received on board the vessel.[2] Rather than basing the recovery of maintenance on actual expenses, here the collective bargaining agreement limited Lundborg's maintenance to a rate of $8 per day.

Four federal circuit courts have upheld collective bargaining contracts that set the rate of maintenance, even though the contractual rate was too low to provide the injured sailor with food and lodging.[3] This line of cases flows from the Ninth Circuit's divided decision in *Gardiner v. Sea-Land Servs., Inc.* There, the court held that deferral to the rate fixed in the collective bargaining agreement was an appropriate accommodation between maritime law and national labor policy, at least in the absence of reason to believe that the collective bargaining process was unfair or that the rate of maintenance was not subject to real negotiation.[4] Keystone urges us to follow the Ninth Circuit. We need not.[5]

■ Lundborg asks us to follow the Third Circuit which rejects the Ninth Circuit approach and allows seamen to

---

[1]*Gardiner v. Sea-Land Servs., Inc.*, 786 F.2d 943, 945-46 (citing *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S. Ct. 651, 82 L. Ed. 993 (1938)), *cert. denied*, 479 U.S. 924 (1986).

[2]*See Baldassaro v. United States*, 64 F.3d 206, 212 (5th Cir. 1995), *cert. denied*, 517 U.S. 1207, 116 S. Ct. 1823, 134 L. Ed. 2d 929 (1996).

[3]*Gardiner*, 786 F.2d at 949-50; *Baldassaro*, 64 F.3d 206; *Al-Zawkari v. American S.S. Co.*, 871 F.2d 585, 588 (6th Cir. 1989); *Macedo v. F/V Paul & Michelle*, 868 F.2d 519, 522 (1st Cir. 1989). *See also Jordan v. Intercontinental Bulktank Corp.*, 621 So. 2d 1141 (La. Ct. App. 1993), *cert. denied*, 510 U.S. 1094 (1994).

[4]*Gardiner*, 786 F.2d at 948-49.

[5]*See Scudero v. Todd Shipyards Corp.*, 63 Wn.2d 46, 48, 385 P.2d 551 (1963); 28 U.S.C.A. § 1333(1) ("saving to suitors" clause). *Cf. Brown v. State*, 816 P.2d 1368, 1373 (Alaska 1991) (declining to follow Ninth Circuit precedent on related maintenance issue).

present evidence that their actual costs exceed the collective bargaining agreement rate.[6] In *Barnes v. Andover Co., L.P.,* the court began from the established premise that maintenance, while an incident of the employment contractual relationship, is not contractual in nature.[7] Rather, maintenance is derived from a seaman's status as a dependent of the ship. The *Barnes* court pointed out that there is a fundamental inconsistency between saying, as the Supreme Court has done, that the right to maintenance cannot be abrogated contractually and adopting a rule that would bind courts to recognize contractual rates of maintenance that are so inadequate as to amount to the same thing.[8] Recognizing the Supreme Court's long-established solicitude for seamen that results in any ambiguities regarding maintenance being " 'resolved in favor of the seaman,' "[9] the *Barnes* court concluded that any departure from the traditional scope of maintenance in maritime law, even to accommodate national labor policy, must be made by Congress rather than by the court.[10] We find the Third Circuit approach to be the better reasoned.

Inadequate rates in collective bargaining agreements cannot be binding because under Supreme Court precedent the ancient maritime law on maintenance supersedes private agreements.[11] Seamen are historically the "wards of

---

[6]*Barnes v. Andover Co., L.P.,* 900 F.2d 630 (3d Cir. 1990). *See also Brown v. United States,* 882 F. Supp. 1424 (S.D.N.Y. 1995); *Gillikin v. United States,* 764 F. Supp. 261 (E.D.N.Y. 1991).

[7]*Barnes,* 900 F.2d at 636 (citing *Cortes v. Baltimore Insular Line, Inc.,* 287 U.S. 367, 371, 53 S. Ct. 173, 77 L. Ed. 368 (1932)).

[8]*Barnes,* 900 F.2d at 637.

[9]*Barnes,* 900 F.2d at 643 (quoting *Vaughan v. Atkinson,* 369 U.S. 527, 532, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962)).

[10]*Barnes,* 900 F.2d at 644.

[11]*E.g., De Zon v. American President Lines,* 318 U.S. 660, 667, 63 S. Ct. 814, 87 L. Ed 1065 (1943); *Cortes v. Baltimore Insular Line, Inc.,* 287 U.S. 367, 371, 53 S. Ct. 173, 77 L. Ed. 368 (1932).

admiralty,"[12] and the courts have accorded them special protection since the medieval maritime codes.[13] Part of this guardianship is maintenance, which protects injured mariners from being abandoned in unfamiliar ports, injured and unable to care for themselves.[14] An $8 per day rate is tantamount to abrogation because this amount of money is patently inadequate.[15]

Keystone argues that it is inappropriate to examine the maintenance rate in isolation of the other negotiated collective bargaining agreement provisions. We reject this argument because it elevates collective bargaining agreements over the right to maintenance. Keystone also argues that not following Ninth Circuit precedent will encourage forum shopping. Given that our approach is consistent with the Third Circuit and district courts in the Second Circuit, we do not find the potential for forum shopping to present a great danger.

In summary, we hold that limiting a seaman to the maintenance rate set in a collective bargaining agreement, without the opportunity to seek higher maintenance based on his or her actual food and lodging expenses, insupportably abrogates the right to maintenance and such a provision is not enforceable.

Lundborg next claims that the trial court erred in dismissing his claim for unearned wages.

█ Keystone is obligated to pay unearned wages, another component of maintenance and cure. The term "unearned wages" refers to the actual wages a seaman did

---

[12]*See Harden v. Gordon*, 11 F. Cas. 480, 485 (C.C.D. Me. 1823) (No. 6,047) (Story, J.); *see Blainey v. American S.S. Co.*, 990 F.2d 885, 887 (6th Cir.), *cert. denied*, 510 U.S. 933 (1993).

[13]*The Osceola*, 189 U.S. 158, 169, 23 S. Ct. 483, 47 L. Ed. 760 (1903) (quoting and citing Rules of Oleron, Laws of Wisbuy, and Laws of the Hanse Towns).

[14]*See Incandela v. American Dredging Co.*, 659 F.2d 11, 14 (2d Cir. 1981).

[15]*See Barnes*, 900 F.2d at 644.

not earn because of the injury or illness.[16] Unlike mainte-
nance and cure, which are paid until maximum recovery
such that payments may extend beyond the voyage,
unearned wages cease at the end of the voyage or other
contracted term of employment.[17] Thus, unearned wages
are paid only through the contemplated "period of employ-
ment."[18]

Federal statute requires that agreements for the terms of
employment for seamen in the coastwise trade be in writ-
ing.[19] Lundborg signed "Shipping Articles for Coastwise
Trade" with the SS *Keystone Rhode Island* providing:

> The term of employment *shall be for one voyage* and with
> agreement of both Master and seaman for successive voyages,
> but not exceeding twelve months in all . . . .

A voyage consists of a trip from one port to the next.[20]
Based on the coastwise articles, Lundborg's employment
ended when he was discharged at the voyage end in
Portland. Under the written agreement, Lundborg's term
of employment was for only "one voyage," and it was in-
definite beyond one voyage. Thus, on its face, the shipping
articles did not create a definite term beyond one voyage.[21]
Accordingly, Lundborg was not entitled to any wages when
he left the ship after his injury because the ship was at the
end of its voyage.

Lundborg argues that an issue of fact exists as to his
contemplated length of employment. Lundborg was dis-
patched from his union hall to serve on the SS *Keystone
Rhode Island*. To claim a term longer than the end of the

---

[16]*Berg v. Fourth Shipmor Assocs.*, 82 F.3d 307, 309 (9th Cir. 1996).

[17]2 Martin J. Norris, The Law of Seamen § 26.7, at 16-18 (4th ed. 1985).

[18]*Berg*, 82 F.3d at 309.

[19]46 U.S.C.A. § 10502(a).

[20]46 U.S.C.A. § 10501(a); *The Osceola*, 189 U.S. at 175. *See Vickers v. Tumey*, 290 F.2d 426, 434 (5th Cir. 1961). *See also Farrell v. United States*, 336 U.S. 511, 520-21, 69 S. Ct. 707, 93 L. Ed. 850 (1949).

[21]*See Berg*, 82 F.3d at 312.

ship's voyage, Lundborg relies on his declaration that he expected to relieve other able-bodied seamen for the 90 days that the union hiring hall dispatched him to serve on the SS *Keystone Rhode Island*. The trial court found this declaration insufficient to create a material issue of fact. We agree with the trial court. The length of Lundborg's employment was not determined by the union dispatch, rather it was determined by the shipping articles he signed with Keystone.

Lundborg also argues that his collective bargaining agreement potentially provides him with a term beyond one voyage. We disagree. The collective bargaining agreement provided that unlicensed personnel "may remain continuously employed" if the "Company and the employees desire such employment to continue" or a seaman "may" be paid off at any United States port upon his or her request with 24-hours notice, subject to replacement availability. This permissive language does not create a definite term. The trial court did not err in granting summary judgment in favor of Keystone on the unearned wages issue.

On the issue of unearned wages, we affirm. On the issue of maintenance, we reverse and remand.

WEBSTER and BECKER, JJ., concur.

Review granted at 136 Wn.2d 1007 (1998).