Terrance J. FREDERICK, Plaintiff-Appellee, Cross-Appellant,

v.

KIRBY TANKSHIPS, INC., Defendant-Appellant, Cross-Appellee.

Terrance J. Frederick, Plaintiff-Appellee,

v.

Kirby Tankships, Inc., Defendant-Appellant.

Nos. 98-2734, 99-2457.

United States Court of Appeals,

Eleventh Circuit.

March 8, 2000.

Appeals from the United States District Court for the Middle District of Florida. (No. 96-01022-CIV-T-26A, Richard A. Lazzara, Judge.

Before DUBINA, Circuit Judge, KRAVITCH, Senior Circuit Judge, and NESBITT[*], Senior District Judge.

DUBINA, Circuit Judge:

This case involves an appeal from a jury verdict in favor of Plaintiff/Appellee/Cross-Appellant, Terrance J. Frederick ("Frederick"), on his claim for Jones Act negligence, unseaworthiness, maintenance, cure, and unearned wages arising from injuries Frederick received from a slip and fall while aboard the ship "Champion." Kirby Tankships, Inc. ("Kirby"), Defendant/Appellant/Cross-Appellee, presents seven issues for appellate review: (1) whether the jury's damages award for unearned wages, maintenance, and cure was excessive; (2) whether the district court erred in denying Kirby's motion for judgment as a matter of law on the issue of maintenance and cure; (3) whether the district court erred in not giving a limiting instruction as to the evidence on Frederick's termination; (4) whether the district court abused its discretion by not granting a mistrial after a witness testified on evidence excluded earlier by an in limine ruling; (5) whether the district court erred in refusing to limit the testimony of an expert witness; (6) whether the failure to plead mitigation

[*]Honorable Lenore C. Nesbitt, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

as an affirmative defense precludes a jury instruction on that defense; and (7) whether the district court abused its discretion in denying Kirby's Federal Rule of Civil Procedure 60(b) motion. Frederick presents two issues on cross-appeal: (1) whether the district court erred in directing a verdict against his claim for penalty wages under 46 U.S.C. § 10504; and (2) whether the district court erred in applying the collective bargaining agreement's maintenance rate, instead of Frederick's actual maintenance expenditures. After a thorough review of the record, we conclude that the jury's damages award for unearned wages, maintenance, and cure is not supported by the evidence. Therefore, we reverse that part of the judgment and remand this case to the district court with instructions to either remit the jury's damages award to $107,946.43 or grant Frederick a new trial on damages. We affirm the district court's judgment on all other issues.

*I. Background*

Kirby owns and operates oil tankers, including the Champion. Kirby hired Frederick, a career ship engineer, to work on the Champion as its chief engineer. Frederick worked on the Champion as it delivered oil from Pascagoula, Mississippi, to various U.S. ports on the Atlantic Ocean.

On September 12, 1994, while aboard the Champion, Frederick slipped and fell on an allegedly oily ramp. As a result, he suffered severe pain in his left knee, hips, and back. He laid on the deck until another crewmember found him and assisted him to his room. The ship's captain, Captain Fox, visited Frederick and entered a notation into the ship's log that Frederick suffered injuries to his "left leg, knee to hip." The ship arrived in port on September 13, and Frederick went to a medical facility where he received a "not fit for duty" slip. He returned to the ship for the night and left the ship the next day. Subsequently, he traveled to his mother's house and stayed with his fatally-ill mother until she died on October 30, 1994.

While at his mother's house, Frederick sought treatment for his injuries. Dr. Sicari treated Frederick for his knee and recommended that he seek further treatment from Dr. Hottentot, an orthopedic surgeon. Dr. Hottentot examined Frederick's knee and concluded that his knee had recovered. Dr. Hottentot, however, discovered that Frederick, for the last 10 to 15 years, has suffered from a degenerative hip condition. As a

2

result, Dr. Hottentot advised Frederick to undergo a bilateral hip replacement and advised Frederick that he should not return to work.

Even though Frederick's hip problems persisted, he returned to work on the Champion in January of 1995 because he needed money. His hips caused him constant pain, but he could not take pain medication onboard the ship because Kirby had a policy against drug use by its employees. Due to the constant pain, Frederick cut short his tour of duty. A few months later, Kirby terminated Frederick, alleging that he falsified oil records. After his termination, Frederick consulted an orthopaedic surgeon, Dr. Choung, who eventually performed right hip replacement surgery on Frederick.

On May 23, 1996, Frederick filed a complaint against Kirby, asserting Jones Act claims of negligence, unseaworthinesss, maintenance, and cure for injuries to his left knee, both hips, and back that he suffered in the slip and fall. He also sought lost wages and penalty wages pursuant to 46 U.S.C. § 10504. After a series of in limine rulings, the district court conducted a jury trial.

After the conclusion of the trial, the jury returned a verdict in favor of Frederick in the amount of $810,903.80. This award included $525,069.00, for unearned wages, maintenance, and cure, and $1,242,760.00, for Jones Act negligence and unseaworthiness, adjusted downward by 77% due to Frederick's pre-existing hip condition. The district court denied Kirby's renewed motion for judgment as a matter of law, or alternatively, motion for a new trial or remittitur. Kirby then appealed to this court.

On August 6, 1998, Frederick filed a second complaint against Kirby seeking additional maintenance and cure payments. This second action, Case No. 98-1559, Civ. T-23 C ("Frederick II"), has been stayed pending resolution of this appeal. On August 21, 1998, Frederick filed another complaint, Case No. 98-207, Civ. OC-10B ("Frederick III"), alleging disability discrimination under the American with Disabilities Act ("ADA") and age discrimination under the Age Discrimination in Employment Act ("ADEA").

Soon after the filing of Frederick II and III, Kirby filed a Federal Rule of Civil Procedure 60(b) motion for relief from judgment, alleging that the two subsequent actions contradicted allegations presented

3

by Frederick in *Frederick I.* The district court denied Kirby's Rule 60(b) motion, and Kirby appealed the district court's ruling to this court. We have consolidated the appeals.

## II. Discussion

### A. Appeals by Kirby

1. Excessiveness of the Maintenance, Cure, and Unearned Wages Damages Award

Kirby contends on appeal that the district court erred in not granting its motion for remittitur, or alternatively, a new trial on damages only, due to the jury's allegedly excessive award for maintenance, cure, and unearned wages. In particular, Kirby avers that the evidence presented at trial supported a maximum award for maintenance, cure, and unearned wages of only $107,947.43, a figure well below the jury's award of $525,069, especially considering that the jury did not award extra damages caused by a willful and arbitrary refusal to pay maintenance and cure.

In an appeal from a denial of a motion for remittitur, this court "must independently determine the maximum possible award that is reasonably supported by the evidence in the record." *Deakle v. John E. Graham & Sons,* 756 F.2d 821, 827 (11th Cir.1985). Any excess must be remitted, or alternatively, a new trial may be granted on damages. *See id.* at 827-28.

We conclude that the record supports $107,947.43 as the maximum possible amount for maintenance, cure, and unearned wages. Frederick's economist, Dr. Susan Long, who relied upon a daily maintenance rate of $15 per day, calculated the maximum past and future maintenance that Kirby owed Frederick to be $20,910.73. Dr. Long also testified that Frederick's past and future medical expenses, i.e. cure, total $75,000, absent any complications. Frederick did not produce any evidence of complications. As to unearned wages, Frederick is entitled to wages from the time of his discharge until his employment term expired. The collective bargaining agreement set his daily wage at $326.24, which, when adjusted at the 21.5 percent tax rate utilized by Dr. Long, amounts to $256.10 per day. Frederick should receive unearned wages for the time between September 14, 1994, the date he disembarked the Champion, and October 30, 1994, the

4

date his mother died, because Frederick testified that he would have disembarked upon her death regardless of his health. For those 47 days, Frederick's unearned wages total $12,036.70. By adding together $20,910.73 for maintenance, $75,000 for cure, and $12,036.70 for unearned wages, we conclude that the maximum possible amount for maintenance, cure, and unearned wages is $107,947.43.

Furthermore, the jury did not award extra damages caused by a willful and arbitrary refusal to pay maintenance and cure. Pursuant to jury instruction number 13, the jury could award damages to Frederick based on a finding of a willful or arbitrary failure by Kirby to pay maintenance and cure.[1] The jury, however, held that Kirby was not willful and arbitrary in its failure to pay maintenance and cure.[2] Thus, the jury's award of $525,069 exceeds the maximum amount of damages supported by the evidence.

Now, we must determine whether to order a remittitur or a new trial. The rule in this circuit states that where a jury's determination of liability was not the product of undue passion or prejudice, we can order a remittitur to the maximum award the evidence can support. *See Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1507 (11th Cir.1985); *Howell v. Marmpegaso Compania Naviera,* 536 F.2d 1032, 1034 (5th Cir.1976).[3] Because the jury refused to find Kirby willful and arbitrary in providing maintenance and cure and found that the accident slightly aggravated a pre-existing injury, we reject Kirby's contention that the jury

---

[1]Jury instruction 13 states:

> However, you [the jury] may still be able to award damages to the Plaintiff for any "willful or arbitrary" failure on the part of the employer to have paid him maintenance and cure when it was due.

> Where the Defendant willfully and arbitrarily fails to pay maintenance or provide cure to a seaman up to the time that he receives maximum cure, and such failure results in an aggravation of the seaman's injury, then the seaman may recover those damages and necessary expenses that he can prove he sustained.

[2]Special jury verdict number nine asked the jury: "If you answered 'Yes' to Question 7 [whether Kirby failed to pay maintenance and cure], was Kirby willful and arbitrary in their failure to pay maintenance and cure." The jury answered "No."

[3]This court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ).

was actuated by passion. *See Howell,* 536 F.2d at 1034 n. 4 (holding that a jury was not actuated by passion where it refused to find the defendant shipowner negligent and found the plaintiff contributorily negligent). In sum, we hold that the evidence presented in this case reasonably supports a maximum award of $107,947.43 for maintenance, cure, and unearned wages. On remand, we direct the district court to order a remittitur in this amount, or at Frederick's option, grant him a new trial on the issue of damages. *See Deakle,* 756 F.2d at 834.

2.      Judgment as a Matter of Law on Maintenance and Cure

Kirby argues that the district court erred in rejecting its motion for judgment as a matter of law on Frederick's maintenance and cure claim. Kirby asserts that Frederick did not produce sufficient evidence to prove that his fall aggravated his pre-existing degenerative hip condition. In deciding a motion for judgment as a matter of law, this court determines whether substantial evidence of such quality and weight exists that reasonable and fair-minded jurors in the exercise of impartial judgment might reach a different conclusion. *See Vulcan Painters, Inc. v. MCI Constructors Inc.,* 41 F.3d 1457, 1461 (11th Cir.1995). In examining the evidence, we view the evidence in the light most favorable to the nonmovant. *See Equitable Life Assur. Soc'y of the United States v. Studenic,* 77 F.3d 412, 415 (11th Cir.1996).

Frederick presented sufficient evidence to prove that the fall aggravated his hip condition. On the day of the fall, Captain Fox reported that Frederick suffered injuries to the "leg, knee to hip." At trial, Dr. Hottentot, an orthopedic surgeon, testified that the fall probably wrenched Frederick's hips and that the fall accelerated the deterioration of his hips. Similarly, Dr. Choung, Frederick's treating physician, testified that the fall probably accelerated the deterioration of Frederick's hips. Dr. Choung also testified that Frederick used his knees and back to compensate for his hip condition and that he could have continued to work if not for the fall. Frederick, however, could not recover from the fall as well as someone without a pre-existing hip condition.

6

We conclude that this evidence, viewed in the light most favorable to Frederick, is of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment could conclude that Frederick's fall aggravated his pre-existing hip condition. *See Landry v. Offshore Logistics, Inc.,* 544 F.2d 757, 760 (5th Cir.1977)("Here, we have the classic conflict. One doctor says that Landry has only a 5% disability and can go back to work. Another doctor, and Landry, say that he cannot. We must resist the temptation to say what we would have done had we been sitting on the jury, for the issue was for it to determine."). Therefore, we affirm the district court's denial of Kirby's motion for judgment as a matter of law as to the maintenance and cure claim.

3.      Evidence of Frederick's Termination by Kirby

Kirby asserts that the district court erred in not giving a limiting instruction on evidence regarding Frederick's termination as required by Federal Rules of Evidence 105 ("Rule 105").[4] Kirby argues that the jury could consider the termination evidence for proof of Frederick's motive to sue, but not for the propriety of the termination. The district court agreed, stating that the jury could consider the evidence only in regards to Frederick's motive to sue, but did not give a limiting instruction as requested by Kirby. Under Rule 105, a court must give a limiting instruction when requested where evidence is admissible for one purpose and not another. *See Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 266 (5th Cir.1980).

We conclude that the district court erred in not granting Kirby's request for a limiting instruction, but the failure to do so was harmless error because Kirby cannot show that the district court's failure to give a limiting instruction affected its substantial rights. *See* Fed.R.Evid. 103(a); Fed.R.Civ.P. 61; *Lubbock,* 630 F.2d at 266. Kirby alleges that Frederick used the termination's propriety to create sympathy and prejudice in the jury, but Kirby does not elaborate beyond this assertion. Therefore, we hold that Kirby has failed to satisfy its burden of demonstrating that it was prejudiced by the district court's failure to give a limiting

---

[4]Fed.R.Evid.105 provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

instruction. *See Hunt v. Marchetti,* 824 F.2d 916, 920 (11th Cir.1987) (holding that a party asserting an error on appeal has the burden of demonstrating prejudice to substantial rights); *Perry v. State Farm Fire & Casualty Co.,* 734 F.2d 1441, 1446 (11th Cir.1984)(same).

4.      Motion for Mistrial

Kirby argues that the district court abused its discretion by not ordering a mistrial after a witness on a videotape alleged that Kirby's employees had intentionally spilled oil onto the Champion's deck.  Prior to trial, the district court, pursuant to Kirby's motion in limine, excluded such evidence as prejudicial.  During the trial, Frederick played the videotaped testimony without excising the testimony on the spilled oil, and thus, the jury heard the inadmissible evidence.

We review a district court's decision on a motion for mistrial for abuse of discretion.  *See United States v. Newsome,* 998 F.2d 1571, 1575 (11th Cir.1993).  To find error warranting reversal, we must find that Kirby made a timely objection and that a substantial right was affected.  *See* Fed.R.Evid. 103(d); *Judd v. Rodman,* 105 F.3d 1339, 1342 (11th Cir.1997).  We conclude, as did the district court, that Kirby did not make a timely objection because it did not object until after the videotape testimony was played.[5]

Alternatively, Kirby argues that its motion in limine preserved its right to appeal this issue. Generally, a party must object to preserve error in the admission of testimony, even when a party or a court violates an in limine ruling.  *See Collins v. Wayne Corp.,* 621 F.2d 777, 785 (5th Cir.1980).  A motion in limine, however, may preserve an error for appeal if a good reason exists not to make a timely objection at trial.  *See Judd,* 105 F.3d at 1342.

Kirby presents two reasons for not objecting immediately.  First, Kirby argues that it elicited most of the allegedly prejudicial testimony on cross-examination, and if Kirby objected to its own cross-examination, then it would have drawn the jury's attention to the prejudicial evidence.  *See Rojas v. Richardson,* 703 F.2d 186, 189 (5th Cir.1983)("An objection to one's own testimony is an absurdity.... This

_____

[5]The district court also noted that Kirby did an excellent job of impeaching the witness and thus reduced the prejudicial effect caused by the introduction of evidence that Kirby had intentionally spilled oil.

8

Circuit consequently found the offensive use of damaging information to fall outside the general rule requiring a timely objection."). Kirby, however, could have objected when the evidence was offered on direct examination, thereby avoiding the potential problem of objecting to its own cross-examination. Second, Kirby asserts that it did not anticipate that Frederick would play the non-excised videotaped testimony and was caught off guard. This is not a valid reason for failing to make a timely objection. Therefore, we conclude that Kirby has not presented a valid reason for its late objection and has not preserved its right to appeal this issue.

5.      Expert Testimony on Frederick's Future Work Life

Kirby argues that the district court abused its discretion by allowing Dr. Choung to testify regarding Frederick's future work life expectancy. Prior to trial, the court denied Kirby's motion in limine to limit Dr. Choung's testimony. At trial, Kirby failed to object to Dr. Choung's testimony regarding Frederick's future work life expectancy. Kirby does not present any reasons for not objecting to the testimony at trial. Thus, Kirby has waived its right to appeal this issue. *See Judd,* 105 F.3d at 1342; *Collins,* 621 F.2d at 785.

6.      Jury Instruction on Failure to Mitigate Damages

Kirby alleges that the district court committed error by denying its requested instruction on mitigation of damages. In particular, Kirby argues that the court erred in holding that the failure to mitigate damages is an affirmative defense.

Federal Rule of Civil Procedure 8(c) ("Rule 8(c)") does not include the failure to mitigate damages among the 19 enumerated affirmative defenses. Most federal courts, however, regard the failure to mitigate as an affirmative defense under Rule 8(c)'s catchall clause which provides for "any other matter constituting an avoidance or affirmative defense." *See Conjugal Partnership v. Conjugal Partnership,* 22 F.3d 391, 400 (1st Cir.1994)("Failure to mitigate is an affirmative defense as a matter of federal procedural law...."); *Lennon v. United States Theatre Corp.,* 920 F.2d 996, 1000 (D.C.Cir.1990) ("[F]ailure to mitigate damages is an affirmative defense under Rule 8(c)."); *Sayre v. Musicland Group, Inc.,* 850 F.2d 350, 354 (8th

Cir.1988)(same). This circuit has held that the "failure to mitigate damages ... is an affirmative defense." *NLRB v. Pilot Freight Carriers, Inc.,* 604 F.2d 375, 376 (5th Cir.1979). Kirby has cited no case to the contrary.

Instead, Kirby asserts two arguments as to why the failure to mitigate damages is not an affirmative defense. First, Kirby, citing to a 1917 case, argues that under admiralty law the failure to mitigate is not an affirmative defense. *See Coronet Phosphate Co. v. United States Shipping Co.,* 260 F. 846, 848 (S.D.N.Y.1917)("[T]here is no propriety, even in admiralty, in pleading evidence in mitigation of damages in the answer to the libel."). This 1917 case, however, predates a change in law which applies the Federal Rules of Civil Procedure to admiralty cases. Since the change in 1966, federal courts have viewed the mitigation of damages as an affirmative defense in admiralty cases. *See Boudreau v. S/V Shere Khan C,* 27 F.Supp.2d 72, 81 (D.Me.1998) (citing *Fashauer v. New Jersey Transit R. Operations, Inc.,* 57 F.3d 1269, 1289 (3rd Cir.1995))("The plaintiff has a duty to take reasonable steps to minimize his or her losses, and the defendant bears the burden of proving breach of such a duty as an affirmative defense."); *see also Davis v. Odeco, Inc.,* 18 F.3d 1237, 1246 (5th Cir.1994)(holding in a maritime case that the defense of set-off against maintenance and cure is an affirmative defense).

Second, Kirby argues that only defenses which relieve liability must be affirmatively pled and not defenses that diminish damages. Kirby cites *Southport Transit Co. v. Avondale Marine Ways, Inc.,* 234 F.2d 947 (5th Cir.1956), for the proposition that the failure to mitigate damages is not a defense, but a mere rule of damages. *See id.* at 952. The *Southport* court did not address whether the failure to mitigate is an affirmative defense, rather it merely explained the difference between contributory negligence and the failure to mitigate. In *Sayre v. Musicland Group, Inc.,* the Eighth Circuit rejected as unsound the exact same assertion that only defenses that bar recovery, rather than those that diminish the amount of damages, must be pled affirmatively. *See* 850 F.2d at 354. Like our sister circuit, we reject Kirby's arguments and hold that failure to mitigate damages is an affirmative defense under Rule 8(c). Accordingly, the district court did not

10

err in rejecting Kirby's jury instruction because failure to plead an affirmative defense results in waiver of that defense. *See American Nat'l Bank v. FDIC,* 710 F.2d 1528, 1537 (11th Cir.1983).

7.      Rule 60(b)

Kirby asserts that the district court abused its discretion by not granting Kirby's Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") motion for relief of judgment. Specifically, Kirby argues that the district court erred by concluding that the subsequent lawsuits filed by Frederick do not amount to a basis for Rule 60(b)(3) relief and by failing to address Kirby's Rule 60(b)(5) and (b)(6) claims. We review the district court's denial of a motion to set aside a judgment pursuant to Rule 60(b) for abuse of discretion. *See American Bankers Ins. Co. v. Northwestern Nat'l Ins. Co.,* 198 F.3d 1332, 1338 (11th Cir.1999). After reviewing the record, we reject Kirby's arguments and affirm the district court's ruling.

a. Rule 60(b)(3)

Rule 60(b)(3) allows a court to grant relief from a final judgment if the moving party proves by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct. *See Scutieri v. Paige,* 808 F.2d 785, 794 (11th Cir.1987); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978). The moving party must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense. *See Scutieri,* 808 F.2d at 794; *Rozier,* 573 F.2d at 1339.

Kirby alleges two instances of fraud and misrepresentation committed by Frederick when he allegedly took a particular position in Frederick I and then took an inconsistent position in Frederick II and III.[6] Kirby argues that Frederick committed fraud and misrepresentation by presenting evidence in Frederick I on the monetary amounts for both past and future maintenance and cure, and then, subsequently suing for

---

[6]In conjunction with its argument, Kirby asserts that the district court erred by considering the pleadings in Frederick II and III as allegations and not as admissible evidence. Generally, "the pleading[s] of a party made in another action ... are admissible as admissions of the pleading party to the facts alleged therein." *Continental Ins. Co. of New York v. Sherman,* 439 F.2d 1294, 1298 (5th Cir.1971). We are persuaded that the district court considered the pleadings as admissible evidence, and accordingly, found that the pleadings did not prove fraud, misrepresentation, or misconduct by Frederick.

11

additional maintenance and cure in Frederick II. Kirby, however, does not point to any factual allegation made in Frederick II that directly contradicts Frederick I. Instead, Kirby only avers that Frederick committed fraud and misrepresentation by suing a second time for maintenance and cure. If Frederick did attempt to take a second bite from the proverbial apple as Kirby argues, then the appropriate action for Kirby is to obtain dismissal of Frederick II on the basis of claim or issue preclusion, and possibly, seek Rule 11 sanctions. However, a Rule 60(b) motion is not appropriate.

Kirby also argues that, in Frederick I, Frederick stated he was unable to work, but filed in Frederick III an age and disability discrimination case under the ADA and ADEA. The ADA defines a "qualified" individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of his job. 42 U.S.C. § 12111(8); *see also Talavera v. School Bd. of Palm Beach County,* 129 F.3d 1214, 1220 (11th Cir.1997) (holding that an employee's certification of total disability for social security disability does not always judicially estop an employee from arguing that she is a qualified individual with a disability under the ADA). Consistent with ADA requirements, Frederick asserts in Frederick III that he can work *with accommodation* after his left hip is replaced. Thus, Frederick's assertion in Frederick III that he could work with accommodation after his hip is replaced is not inconsistent with his claimed inability to work in Frederick I. Accordingly, we reject Kirby's arguments and affirm the district court's Rule 60(b)(3) ruling.

### b. Rule 60(b)(5) and Rule 60(b)(6)

Kirby also argues that the district court erred by not addressing its Rule 60(b)(5) and (b)(6) arguments. Rule 60(b)(5) allows a court to provide relief from judgment where "it is no longer equitable that the judgment should have prospective application." Kirby argues that the alleged inconsistencies arising from Frederick II and III make enforcement of the jury's verdict in Frederick I no longer equitable. In fact, the district court did address this argument and found that Kirby presented no evidence that cast doubt on the integrity of Frederick I. We conclude that the district court correctly rejected Kirby's Rule 60(b)(5) argument.

Rule 60(b)(6) allows a court to provide relief from judgment for "any other reason justifying relief from the operation of the judgment." Federal courts grant relief under Rule 60(b)(6) only for extraordinary circumstances. *See High v. Zant,* 916 F.2d 1507, 1509 (11th Cir.1990). Kirby contends that it deserves relief because Frederick's counsel, during closing arguments in Frederick I, stated that this case was Frederick's last and only chance to receive compensation for his injuries. We agree with the district court that this comment may have been inappropriate, but that it is not sufficient to grant Rule 60(b)(6) relief. Kirby raises two additional arguments for Rule 60(b)(6) relief, both of which are meritless and are more appropriately raised in Frederick II and III as arguments for claim or issue preclusion. Thus, we affirm the district court's denial of Kirby's Rule 60(b) motion.

B.      *Cross-Appeals by Frederick*

1.      Penalty Wages Claim

Frederick argues on appeal that the district court incorrectly interpreted 46 U.S.C. § 10504 when it concluded that he was not entitled to collect penalty wages. This court reviews a district court's statutory interpretation *de novo. See United States v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir.1999) (*en banc* ). In addressing Frederick's contention, we must first determine the type of voyage the Champion undertook. Only after that determination can we examine the appropriate penalty wage statute to determine Frederick's rights and whether an exception to the penalty wage statute excludes Frederick's claim.

First, Frederick argues that the district court incorrectly held that the Champion was on a *coastwise* voyage. Instead, Frederick avers that the Champion was on a *coasting* voyage. Frederick's attempted distinction between a coasting voyage and a coastwise voyage is irrelevant. The prior penalty wage statute, 46 U.S.C. § 596, provided for a right to collect penalty wages in coasting voyages, but section 544 specifically excluded seamen on coastwise voyages from collecting penalty wages. The current statute, however, does not distinguish between coasting and coastwise voyages. Instead, the current statute, which

13

does not mention coasting voyages, establishes three designations for voyages: foreign, intercoastal, and coastwise.

Under the current statutory scheme, the Champion was on a coastwise voyage. The statute defines a coastwise voyage as "a voyage between a port in one State and a port in another State (except an adjoining State)" and excludes from the definition voyages between a U.S. port on the Atlantic Ocean and a U.S. port on the Pacific Ocean. *See* 46 U.S.C. §§ 10301(a), 10501(a). The Champion traveled from Mississippi to Connecticut—a coastwise voyage.

Section 10504 provides a right to penalty wages for seamen on a coastwise voyage. The penalty wage provision states that a master must pay a seaman the balance of wages due within two days of termination, otherwise the master must pay the seaman two days' wages for each day payment is delayed. *See* 46 U.S.C. § 10504(b) & (c). This section, however, excludes seamen on "a vessel engaged in coastwise commerce" from this penalty wage provision.[7] *See* 46 U.S.C. § 10504(d)(1).

Section 10504 does not provide a separate definition for "coastwise commerce," but section 10501 provides a clear definition of "coastwise." As previously stated, the Champion falls under section 10501's definition of "coastwise." Now, we need only determine whether the Champion engaged in commerce. At a minimum, commerce includes the transportation of goods between states. *See* Black's Law Dictionary 263 (7th ed.1999)(defining "commerce" as "the exchange of goods and services, especially on a large scale

---

[7]Title 46 U.S.C. § 10504 in pertinent part states:

> (b) The master shall pay a seaman the balance of wages due the seaman within 2 days after the termination of the agreement required by section 10502 of this title or when the seaman is discharged, whichever is earlier.

> (c) When payment is not made as provided under subsection (b) of this section without sufficient cause, the master or owner shall pay the seaman 2 days' wages for each day payment is delayed.

> (d) Subsections (b) and (c) of this section do not apply to:

> (1) a vessel engaged in coastwise commerce.

14

involving *transportation between cities, states and nations* ")(emphasis added).  The Champion engaged in

commerce because it transported heating oil between Mississippi and Connecticut.  Thus, the district court

correctly held that the Champion engaged in coastwise commerce.[8]

We recognize that the exclusion of "a vessel engaged in coastwise commerce" from the right to

recover penalty wages effectively eliminates the benefit of the penalty wage provision for coastwise voyages.[9]

*See Dunham v. M/V Marine Chemist,* 812 F.2d 212, 215 (5th Cir.1987) (holding that a claim for penalty

wages, pursuant to section 10504, no longer applies to coastwise voyages).  The legislative history

surrounding this chapter sheds light on this contradiction.

Congress re-codified the shipping laws in 1983 in order to clarify and reorganize a confusing

collection of individual statutes enacted over a period of two centuries.  *See* H. Rep. No. 98-338, at 113

(1983), *reprinted in* 1983 U.S.C.C.A.N. 924, 924.  As part of this reorganization, Congress placed the laws

regarding foreign and intercoastal voyages into a different chapter than coastwise voyages.  In particular,

Congress placed a penalty wage provision in both 46 U.S.C. § 10313, which applies to foreign and

intercoastal voyages, and 46 U.S.C. § 10504, which applies to coastwise voyages.  After the reorganization,

Congress noticed that the new penalty wage provisions did not include the coastwise exception found in the

---

[8]Frederick cites *Solvang v. M/T PLAN KRISTINE,* 1994 A.M.C. 1133 (S.D.Tex.1993), for the proposition that the coastwise commerce exception does not include a trip from a U.S. port on the Gulf Coast to a U.S. port on the Atlantic coast.  *See id.* at 1138.  The *Solvang* court explained that the coastwise commerce exception differs from a coastwise voyage in that the exception only excludes vessels that work on sheltered bodies of water.  *See id.*  As a result, the coastwise exception did not apply because the "Gulf of Mexico is not a sheltered body of water such as a harbor or coastal waterway and is not within the coastwise commerce exception." *See id.* (*citing Carson v. Gulf Oil Corp.,* 123 So.2d 35, 39 (Fla.App.Ct.1960)).  Section 10501, however, does not refer to sheltered bodies of water or harbors in its definition of coastwise.  Instead, Congress clearly intended the coastwise commerce exception to cover coastwise voyages engaged in commerce.  Thus, we conclude that these cases are unpersuasive.

[9]We note that there may be instances in which a vessel is on a coastwise voyage, but not engaged in commerce, and accordingly, not engaged in coastwise commerce.  However, we believe that such a situation would arise rarely, if at all, and perhaps this is a distinction without a difference.  Moreover, we do not have to decide that issue in this case because we hold that the Champion engaged in commerce.

15

prior law.[10]  To rectify this error, Congress amended 46 U.S.C. § 10504(d)(1) to exclude vessels engaged in

coastwise commerce, and in the amendment's legislative history, expressly explained its rationale for

amending the statute by stating that:

> Coastwise commerce encompasses voyages of vessels from one place in the United States to another, including voyages on the Great Lakes, but not voyages from the Atlantic Coast to the Pacific Coast.... Under prior law (former 46 U.S.C. 544), vessels engaged in coastwise commerce were exempt from this requirement.  However, in the codification of the shipping laws in title 46, ... this exemption was inadvertently omitted....  This section [10504(d)(1)] would simply restore the coastwise ... commerce exemption so that the affected vessels will not have to disrupt the pay and accounting systems already in place just because of an oversight in the codification of title 46, United States Code.

S.Rep. No. 99-26, at 4 (1985), *reprinted in* 1985 U.S.C.C.A.N. 25, 28.

Thus, Congress intended this odd statutory structure.

In sum, we hold that "a vessel engaged in coastwise commerce" is a vessel engaged in commerce that

travels between a U.S. port in one State and a U.S. port in another non-adjacent State, except a vessel that

travels between a U.S. port on the Atlantic Coast and a U.S. port on the Pacific Coast.  We also hold that the

Champion was on a coastwise voyage and engaged in coastwise commerce.  As a result, we affirm the district

court's holding that Frederick could not collect under the penalty wage statute.

2.      Applicable Daily Maintenance Rate

---

[10]The prior statute, 46 U.S.C. § 596, provided in pertinent part:

> The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens;  and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged....  Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods.

Title 46 U.S.C. § 544 provided that "[n]one of the provisions in sections ... 591-596 ... of this title shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts...."

16

Frederick contends that the district court erred in holding that the collective bargaining agreement ("CBA") rate of $15 per day for maintenance applies even though he spent substantially more for maintenance. This circuit has not addressed this issue, and the other federal circuit courts that have are divided.

The duty to pay maintenance is imposed by "general maritime law." *Cortes v. Baltimore Insular Line, Inc.,* 287 U.S. 367, 370-71, 53 S.Ct. 173, 77 L.Ed. 368 (1932). The right of maintenance consists of the right to payments sufficient to provide a seaman with food and lodging comparable to the kind received aboard ship. *See Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 528, 58 S.Ct. 651, 82 L.Ed. 993 (1938). This duty attaches once the seaman enters the service of a ship. *See De Zon v. American President Lines,* 318 U.S. 660, 667, 63 S.Ct. 814, 87 L.Ed. 1065 (1943). No private agreement is competent to abrogate the shipowner's duty to pay maintenance.[11] *See id.*

Relying heavily on the principle stated in *De Zon,* the Third Circuit's minority position holds that a CBA maintenance rate does not bind a seaman, if the seaman can prove higher daily expenses. *See Barnes v. Andover Co., L.P.,* 900 F.2d 630, 640 (3rd Cir.1990)("[A] union cannot bargain away the individual seaman's common law right to maintenance by agreeing to a wholly inadequate figure as a daily maintenance rate."). The *Barnes* court noted that a CBA could set the maintenance level so low as to abrogate a seaman's right to maintenance and thus violate *De Zon. See id.* at 637. Furthermore, the court held that neither the federal labor laws nor their underlying policies preempted the common law right to maintenance. *See id.* at

_____

[11]The Supreme Court, in *Calmar,* summarized the policy rationale underlying this duty:

> The reasons underlying the rule, to which reference must be made in defining it, are those enumerated in the classic passage by Mr. Justice Story in *Harden v. Gordon,* C.C., Fed.Cas.No. 6047: The protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.

303 U.S. at 528, 58 S.Ct. 651.

17

639-40. The Third Circuit therefore concluded that the traditional doctrine allowing for maintenance could require a court to ignore the terms of a CBA. *See id.* at 640.

We conclude that the Third Circuit's minority position is unpersuasive, and instead, join the majority of circuit courts in holding that where a CBA fixes a maintenance rate, the court should accept it as reasonable. *See Baldassaro v. United States,* 64 F.3d 206, 212 (5th Cir.1995)(enforcing rate of $8 set in CBA); *Al-Zawkari v. American S.S. Co.,* 871 F.2d 585, 588 (6th Cir.1989)(same); *Macedo v. F/V Paul & Michelle,* 868 F.2d 519, 522 (1st Cir.1989)(enforcing rate of $10 set in CBA); *Gardiner v. Sea-Land Serv., Inc.,* 786 F.2d 943, 948 (9th Cir.1986)(enforcing rate of $8 set in CBA). The majority position agrees with the minority in that labor law does not preempt the common law maritime right of maintenance. *See Gardiner,* 786 F.2d at 948. The majority, however, differs in holding that the changed circumstances of unionized seamen undercut the rationale supporting the traditional right to maintenance and cure. *See Macedo,* 868 F.2d at 522 (citing *Gardiner,* 786 F.2d 943).

Moreover, the broad labor policies which undergird federal labor law, as well as the nature of the collective bargaining process, require adherence to the CBA. *See Gardiner,* 786 F.2d at 948-49. "Congress viewed collective bargaining as a key instrument in its effort to promote industrial peace.... [T]his court will not lightly embrace the repudiation of contractual obligations enumerated in a collective bargaining agreement and will choose the rule that will promote the enforcement of collective bargaining agreements." *Baldassaro,* 64 F.3d at 212-13 (quoting *Gardiner,* 786 F.2d at 948) (citations omitted). Although the right to maintenance is a common law right, its rate may be subject to the negotiation process. *See Gardiner,* 786 F.2d at 948. In considering the negotiation process, we note that, as in *Baldassaro* and *Gardiner,* Frederick makes no allegations that the CBA as a whole is unfair or that the union did not adequately represent him. During the negotiation process, the right of maintenance is but one of many issues over which the parties negotiate. *See id.* As a result, a court should not examine the adequacy of the maintenance rate in isolation "because the determination of its adequacy in relation to the whole scheme of benefits has already been made

18

by the union and the seamen who voted for the contract." *Baldassaro,* 64 F.3d at 213 (quoting *Gardiner,* 786 F.2d at 949) (citations omitted).

Frederick also argues that this court should create an exception to the majority position because Kirby acted inequitably by failing to pay weekly maintenance to him as required by the CBA. Instead, five months after the injury, Kirby paid Frederick a lump-sum. Kirby counters by asserting that it had trouble locating Frederick, who was at his sick mother's home, and that once Kirby found him, Frederick informed Kirby that he would advise Kirby at a later date as to the proper time and location to send the money. Thus, Kirby contends that it acted equitably and made a good faith effort to satisfy the CBA. The jury agreed with Kirby and held that Kirby did not willfully and arbitrarily fail to pay maintenance and cure to Frederick. We need not decide whether to create an exception to the majority position because we conclude that Kirby acted equitably. Consequently, we hold that where a CBA fixes a maintenance rate, the CBA rate applies even if the seaman spent substantially more for maintenance. Thus, we affirm the district court's decision to apply the CBA's daily maintenance rate of $15.

### III. Conclusion

The jury's award of damages for unearned wages, maintenance, and cure in the amount of $525,069 exceeds the maximum amount supported by the evidence. The evidence supports a maximum award of $107,947.43 only. As a result, we reverse that part of the district court's judgment entered on the jury's verdict and remand this case to the district court with instructions to order a remittitur reducing the award of damages to $107,947.43, or, at Frederick's option, grant a new trial on the question of damages. We affirm the judgment as to all remaining issues.

AFFIRMED in part, REVERSED in part, AND REMANDED.

19