[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-12619
_____

D. C. Docket No. 98-02076-CV-DLG

JOSE ANTONIO CABRERA ESPINAL,

Plaintiff-Appellee,

versus

ROYAL CARIBBEAN CRUISES, LTD.,
CELEBRITY CRUISES, INC.,

Defendants-Appellants.

_____

No. 00-13268
_____

D. C. Docket No. 99-02475-CV-SH

JOSE ANTONIO CABRERA ESPINAL,

Plaintiff-Appellant,

versus

ROYAL CARIBBEAN CRUISES, LTD.,
CELEBRITY CRUISES, INC.,

Defendants-Appellees.

---

Appeals from the United States District Court
for the Southern District of Florida

---

**(June 8, 2001)**

Before TJOFLAT and WILSON, Circuit Judges, and RESTANI[*], Judge.

PER CURIAM:

Jose Antonio Cabrera Espinal ("Cabrera Espinal") is the plaintiff in two related cases that have been consolidated on appeal. Addressing each temporally according to the date filed, we will refer to the cases as Espinal I and Espinal II. For the reasons stated below the district court's decision in Espinal I is affirmed in part and reversed in part, and Espinal II is affirmed.

## ESPINAL I

Cabrera Espinal worked on Royal Caribbean Cruises' ("RCC") ships as a tip-earning employee under a contract that commenced on December 23, 1997 and expired on November 23, 1998. The contract provided for at-will employment to be terminated with two weeks notice. A collective bargaining agreement ("CBA") governed the contract.

---

[*]Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

The contract provided for a guaranteed minimum monthly income of $766.00 ($50 in contract wages and $716 in tips). If an employee did not receive the calculated monthly minimum in tips, RCC would provide the difference.

In February of 1998, Cabrera Espinal herniated a lumbar disc and was unable to finish his employment contract due to his work related injury. Pursuant to the CBA, RCC paid him sick wages from the time he became injured for 112 days in the amount of $766 per month. Cabrera Espinal brought suit against RCC contending that he is entitled to his average or actual monthly salary ($1500 which includes $1450 in tips) as sick wages instead of the guaranteed minimum.

The district court agreed with Cabrera Espinal and found that he was entitled to actual wages for the 112 days provided for in the CBA. RCC now appeals that decision.

DISCUSSION

The sole question for review is whether the district court should have applied general maritime law or the CBA in calculating the amount of unearned sick wages and the length of time for which those wages are due. We review a motion granting summary judgment *de novo*, applying the same legal standards used by the district court. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).

Under general maritime law, seamen are entitled to bring an action for "maintenance and cure," a remedy available to compensate seamen who fall ill or become injured during the their term of employment. *See Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1122 (11th Cir. 1995). The Supreme Court has previously recognized that a ship owner's liability for maintenance and cure is among the most pervasive and should not be defeated by narrow or restrictive distinctions. *See Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962). Nonetheless, the remedies provided for in maritime law may be altered although not abrogated by collective bargaining agreements. *See Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1291 (11th Cir. 2000) (holding that where a CBA fixes a maintenance rate, the term should be enforced), *cert. denied*, __ U.S. __, 121 S. Ct. 46 (2000). "[T]he broad labor policies which undergird federal labor law, as well as the nature of the collective bargaining process, require adherence to the CBA." *Id.*; *see also Gardiner v. Sea-Land Serv., Inc.*, 786 F.2d 943, 948 (9th Cir. 1986). The reason for this is that a CBA represents a mutual agreement encompassing a wide range of issues for which some provisions will result in greater protection than that represented by statute while others will result in less. *Frederick*, 205 F.3d at 1291; *see also Lipscomb v. Foss Maritime Co.*, 83 F.3d 1106, 1108-9 (9th Cir. 1996). As a result, based on the greater considerations that result in a collective bargaining agreement, this court will enforce the provisions

4

unless contrary to the law. *See Marshall v. Western Grain Co.,* 838 F.2d 1165, 1168-70 (11th Cir. 1988)(per curiam).

General maritime law guarantees seamen: "(1) maintenance, which is a living allowance; (2) cure, which covers nursing and medical expenses; and (3) wages." Herbert R. Baer, *Admiralty Law of the Supreme Court* 6 (3d ed. 1979); *see* 1B *Benedict on Admiralty* § 43 (7th ed. 1994). Our case law has previously held that the wages for incapacitated seamen should be measured based on their average tip income. *See e.g., Flores,* 47 F.3d at 1127; *Aksoy v. Apollo Ship Chandlers, Inc.*, 137 F.3d 1304 (11th Cir. 1998)(per curiam).

RCC argues that the district court erred in applying our previous case law in light of a collective bargaining agreement that explicitly states how sick pay and basic monthly wages would be measured. It contends that prior case law used average tip income as a measure simply because no other method of calculation existed and had this situation been presented to those panels, they would have found the CBA applicable.

Given this argument, we first look to whether the CBA modified general maritime law. The CBA states:

> Wages (basic monthly wage), will continue [after the seafarer leaves the ship] on submission of satisfactory medical certificates for a maximum of 112 (hundred and twelve) days.

5

CBA, Article 12. An attached chart also indicates what specific "basic monthly wage" and "sick pay" are. The district court held that the CBA expressly modified the maritime law computation of sick wages. We agree. Yet, the district court relied on a series of cases, which calculated sick wages as wages plus average tip-income instead of a fixed minimum, to hold that the clause modifying maritime law was inapplicable. We find that the district court erred in finding the clause inapplicable.

The two cases that the district court relies on in support of basing sick wages on the average tip income of the seafarer are *Flores* and *Aksoy*. *Flores* is easily distinguishable because there Carnival Cruise Lines argued that it had no legal duty to pay more than the $45-per-month salary as unearned (or sick) wages. 47 F.3d at 1122. In a case of first impression, the court held that tip income must be included in the calculation of unearned wages. *Id.* at 1127. It, then, set the rate as the average tip income earned absent any other prevailing authority on the matter. *Id.* Three years later, the *Aksoy* court relied on the *Flores* logic to calculate unearned wages as the average tip income plus guaranteed minimum wage because "Aksoy's contract did not purport to place a limit on the amount of unearned wages Aksoy was entitled to receive. . ." *Aksoy*, 137 F.3d at 1306. The present case is distinguishable not only because a plain language reading of the CBA purports to limit the amount of unearned wages but also in the intervening period, we have adopted a view of the law that

6

requires us to rely on collective bargaining agreements' modifications of maritime law. *See Frederick*, 205 F.3d at 1291.

Therefore, we conclude that nothing in maritime law prevents the setting of sick wages below the average tip income received. The CBA in the instant case, as is true in any collective bargaining agreement, represents a series of trade-offs between an employer and employees reaching a mutually satisfying agreement. Courts should be loathe for a multitude of reasons to abrogate clauses in such contracts absent a pressing legal reason. Furthermore, precedent in this circuit may be distinguished on the grounds that none of the employment contracts in those cases explicitly indicated how sick pay and basic monthly wages would be calculated. As the CBA in this case did, we find that the district court erred in not relying on the CBA to calculate the amount of unearned sick wages. However, because the district court correctly relied on the CBA to calculate the length of time for which those wages should be paid, that part of the opinion is affirmed. *See Farrell v. United States*, 336 U.S. 511, 520-21 (1949) (holding that a seaman's length of voyage is the duration of employment for which sick wages are due unless some longer term is enforceable); *Nichols v. Barwick*, 792 F.2d 1520, 1524 (11th Cir. 1986) (same).

<u>ESPINAL II</u>

7

Filed later in time than Espinal I but occurring prior to the events that led up to that case, Cabrera Espinal appeals the district court's grant of summary judgment to the RCC.

Cabrera Espinal was a tip-earning employee under a contract for Celebrity Cruises, Inc.,[1] which commenced on November 4, 1996 and expired on October 3, 1997. His contract guaranteed him income of $743 per month ($50 in wages with the rest in tips). He could be terminated at-will and without notice.

Cabrera Espinal developed an eye injury during his period of employment but waited until the boat returned to port at its final destination on October 1, 1997 before receiving medical attention. Prior to the end of the voyage, Cabrera Espinal consulted the ship's doctor. Upon leaving the ship, he first saw a doctor in Miami and then in his native land of Honduras where the medical attention he received resulted in a cure on December 3, 1997.

RCC paid sick wages to Cabrera Espinal based on the guaranteed minimum for 63 days under the then applicable CBA. Cabrera Espinal again argues that he was entitled to actual earnings of $1500 during that period. The district court granted summary judgment to RCC stating that because Cabrera Espinal's contract terminated

---

[1]Royal Caribbean Cruises bought out Celebrity Cruises prior to Cabrera Espinal's receipt of sick wages.

on or about October 1, 1997, he was not entitled to receive any sick pay under either maritime law or the CBA as of that date.

## DISCUSSION

The sole question for review is whether the district court erred in granting summary judgment to RCC by finding that Cabrera Espinal was not an employee and thus not entitled to sick pay under the CBA or maritime law.

Cabrera Espinal contends that in light of the rule of *Farrell*, 336 U.S. 511,[2] the CBA's sick period and wage provisions did not become null and void when the employment contract expired. He further argues that because RCC paid some sick wages, it is an implicit admission that sick wages are due.

For all the reasons stated in Espinal I, we hold that the CBA applies. Article 2 of the CBA states that an employee is covered by the agreement until the owner ceases to be liable for wages or the date at which the employee signs off the ship. It is undisputed that Cabrera Espinal signed off the ship on October 1, 1997, after the final voyage was completed and two days before his employment contract expired and the boat would leave port again. Article 12 of the CBA provides that a signed off seafarer who lands in any port as a result of injury or sickness will continue to receive his

---

[2]*Farrell* held that as a general rule a seaman's employment term is the length of voyage unless there is a longer term of employment enforceable.

9

wages until he has been repatriated at company expense. The seafarer will then be paid in advance for the anticipated number of days certified by a doctor that he is expected to be sick or injured.

The boat that Cabrera Espinal was employed on docked in Los Angeles. Cabrera Espinal was flown at company expense to Miami, where he received an initial examination. On October 4, 1997, he flew home to Honduras for surgery. His surgery was completed on December 3, 1997. At the time of Cabrera Espinal's operation, Celebrity Cruise Lines merged with RCC. RCC contends that it was during this confusing time when it was unclear whose CBA applied and paperwork was lost that a disbursement for sick wages was made.

We need not decide when and under what circumstances Cabrera Espinal received sick wages. It is more than enough to rely on the fact that a "seaman's action for maintenance and cure may be seen as one designed to put the sailor in the same position as he would have been had he continued to work: . . . and he receives an amount representing his unearned wages for the duration of his voyage or contract period." *Flores*, 47 F.3d at 1127; *see also Farrell*, 336 U.S. at 516 (stating that a seaman must be in service of the ship at the time of his injury to receive maintenance and cure). In the instant case, the final voyage was completed and only two days were left on Cabrera Espinal's employment contract. To find that the company owed

10

him any further obligations would contradict both contract law as embodied in the CBA and this circuit's interpretation of general maritime law. As a result, we affirm the district court's grant of summary judgment to RCC.

## CONCLUSION

In Espinal I, we find that the CBA governed in its entirety the amount and duration of sick wages to be paid. As a result, the district court's calculation of the amount of sick wages is REVERSED.

The application of the CBA's 112-day sick period is AFFIRMED.

As it appears that RCC paid sick wages for 112 days based on its calculation of the basic monthly wages, it has fulfilled its obligations to Cabrera Espinal.

In Espinal II, because we find that Cabrera Espinal was sufficiently compensated for his term of employment and was owed no further duty at the time he was recuperating from his eye injury, the district court's grant of summary judgment is AFFIRMED.

Finally, RCC complied with the CBA and no evidence of bad faith exists on its part. *See Flores*, 47 F.3d at 1127. Therefore, Cabrera Espinal's motion requesting attorneys' fees is DENIED.

11