[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12863
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-00167-CV-RLV-4

HOWARD GREGORY CORDELL,

Plaintiff-Counter
Defendant-Appellant,

ALYSSA HARRELL CORDELL,
Individually and as parent
of Lucas Gregory Cordell, a minor,

Plaintiff,

versus

PACIFIC INDEMNITY COMPANY,
CHUBB & SON,
a division of Federal Insurance Company,

Defendants-Counter
Claimants-Appellees

JOHN DOES A THROUGH F,

Defendant-Appellee,

CHUBB CORPORATION, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____
(June 1, 2010)

Before WILSON, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Howard Gregory Cordell appeals, *pro se*, the district court's denial of his motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). Cordell moved for relief from judgment after the district court dismissed John Does A through F, Chubb & Son, Inc., and Chubb Corporation ("Chubb") as defendants, and the jury granted a verdict in favor of Pacific Indemnity Company ("Pacific"), in the underlying insurance-coverage litigation concerning a house fire.

On appeal, Cordell argues that he is entitled to relief under Rule 60(b)(3) because Pacific offered both fraudulent evidence and misrepresented the evidence presented at trial. Specifically, Cordell claims that Pacific violated Rule 60(b)(3) by: (1) offering into evidence a fraudulent Event History Report from ADT Home Security,[1] (2) entering a fraudulent transcript of a videotaped interview of Chester Ganyon into evidence, (3) presenting Howard Zandmand's testimony, which

_____

[1] ADT is an acronym for American Home District

2

misrepresented facts regarding the Cordells' financial condition, (4) misrepresenting that Cordell never mentioned Vidal Rodriguez as a potential arson suspect until well into the investigation, (5) making other fraudulent statements during its closing argument, and (6) fraudulently filing for an entry of judgment against the Cordells. Upon review of the record and consideration of the parties' briefs, we affirm.

## I.

We "show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). "We review a district court's denial of a motion for relief from judgment under Rule 60(b)(3) for abuse of discretion." *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007) (citation omitted).

## II.

Rule 60(b)(3) provides relief from final judgment due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Overall, Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978). "To prevail on a 60(b)(3) motion, the

movant must prove by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." *Cox Nuclear Pharmacy, Inc.*, 478 F.3d at 1314 (citation and alteration omitted). "The moving party must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000). Furthermore, "[a]n appeal of a ruling on a Rule 60(b) motion . . . is narrow in scope, addressing only the propriety of the denial or grant of relief and does not raise issues in the underlying judgment for review." *Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999). "[T]he law is clear that Rule 60(b) may not be used to challenge mistakes of law which could have been raised on direct appeal." *Id.* (citation omitted).

A.     *The ADT Event History Report*

Cordell argues that Pacific knowingly entered a fraudulent Event History Report ("the report") from ADT. *See* Exh. 217. The report contains information regarding activities in Cordell's home before it was destroyed in a fire. Cordell claims that he attached certain documents to his Rule 60(b)(3) motion indicating that the report was fraudulent because the request to have carbon monoxide detectors installed in his home was omitted on the report. Cordell also claims that Chubb has a history of bribery and was also responsible for bribing an ADT

4

employee to alter the report. Lastly, Cordell argues that the trial court erred by precluding him from challenging the report's certificate of authenticity. These arguments have no merit.

First, Cordell has not offered any evidence to demonstrate that an ADT employee was bribed. Second, Cordell has not provided any information to substantiate his claim that he made a request to have carbon monoxide detectors placed in his home prior to the fire, or that an authentic report would necessarily display that information. Moreover, even assuming that Cordell did make this request and the report omitted this information, this does not constitute clear and convincing evidence that the report is fraudulent in light of the fact that a certificate of authenticity was presented at trial. *See* Exh. 217; Vol. 7-358 at 141, 144, 161. Furthermore, a direct appeal, not a Rule 60(b) motion, is the proper avenue to challenge the issue of authenticity. Finally, Cordell has not explained how Pacific's introduction of the report into evidence prevented him from fully and fairly presenting his case. Accordingly, we find that the district court committed no error.

B.      *The Transcript of Chester Ganyon's Videotaped Interview*

Cordell argues that Pacific knowingly entered into evidence a fraudulent transcript of Ganyon's videotaped interview conducted by the Georgia Bureau of

5

Investigations ("GBI"). Specifically, Cordell asserts that omissions in the transcript constitute fraud.[2] Cordell alleges that Pacific conspired with GBI to produce the fraudulent transcript. In addition, Cordell further alleges that Pacific conspired to commit perjury by presenting Ganyon as a witness, even though they knew he was not reliable. Lastly, Cordell argues that the trial court erred by: (1) preventing him from challenging the validity of the transcript; (2) and by denying admission of the videotape into evidence for the jury to compare with the transcript. After review of the record, we find Cordell's arguments have no merit.

First, Cordell's claim fails because he has not provided clear and convincing evidence that the transcript is fraudulent. Furthermore, Cordell made a similar argument at trial, but the trial court rejected his objections twice and explained that there was "no evidence" that the transcript was incomplete. Vol. 7-358 at 106–08, 110–11. Consequently, to the extent that Cordell's arguments challenge the trial court's decision not to admit the videotape into evidence, we find that these arguments raise legal issues which are beyond the scope of Rule 60(b)(3). Furthermore, even though Cordell contends that the transcript is fraudulent, he does not assert that, as a result, this prevented him from presenting his case fully

---

[2] In particular, Cordell identifies one of the omissions as a question from Ganyon to Crosby asking if the GBI wanted "Cordell bad." Cordell also claims that the transcript incorrectly uses the word "roads" rather than "drugs."

6

and fairly. Finally, we will not address Cordell's contention that Pacific knowingly conspired to commit perjury with Ganyon because Cordell raises this argument for the first time in his reply brief. *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (per curiam) (citation omitted). Accordingly, we find no error with the district court's decision.

C. *Howard Zandmand's Testimony*

Cordell argues that Pacific's financial expert, Zandmand, misrepresented facts and inappropriately based his testimony on fraudulent property appraisals created by Robert Mines, who was hired by Pacific. According to Cordell, Mines incorrectly appraised his Mitchell Street property at $265,000 when it was actually worth $110,000. Cordell, however, has not proffered any evidence to substantiate these claims. Rather, the record shows that Zandmand stated multiple times during his testimony that he did not rely on any appraisals in formulating his expert opinion. Vol. 8-359 at 21–22, 104–05. Consequently, Cordell's argument fails because he has neither provided clear and convincing evidence of fraud or misrepresentations nor addressed how he was prevented from presenting his case fully and fairly. Accordingly, we find that the district court did not err.

D. *Pacific's Statements During Closing Argument*

1. *Vidal Rodriguez*

7

Next, Cordell contends that, during closing argument, Pacific made misrepresentations that Cordell failed to mention Rodriguez as a potential arson suspect until well into the investigation. Cordell claims, however, that he told George Clark, Pacific's investigator, about Rodriguez right after his home burnt down and that his counsel had multiple conversations about Rodriguez with Pacific during discovery. This argument is unpersuasive.

Even if Cordell's attorneys did mention Rodriguez multiple times during discovery, Cordell has failed to show how this would make Pacific's statements a misrepresentation. Pacific's statement merely claimed that Cordell did not mention Rodriguez as a suspect during its earlier investigation. Thus, even assuming that Cordell did tell others about Rodriguez at the onset of the investigation, which he has not substantiated, this did not necessarily indicate that Pacific's statement during closing argument was false.

*2. Cordell's Financial Obligations and the Destruction of the Home*

Cordell also argues that, during its closing argument, Pacific made the following misrepresentations: that his wife, Alyssa, obtained financing for their home; that the Cordells were unable to meet their financial obligations; and that the Cordells paid someone to destroy their home. Cordell claims that letters from bank representatives, which allegedly display his financial stability, illustrate that

8

Pacific's statements were misrepresentations. These contentions are also unpersuasive.

Again, Cordell has failed to provide clear and convincing evidence that Pacific's statements in its closing argument were misrepresentations or fraudulent. Moreover, Cordell has not explained why it would be impermissible for Pacific to make an inference from the evidence that the Cordell played a role in the fire that destroyed their home. *See Commercial Credit Equip. Corp. v. L & A Contracting Co., Inc.*, 549 F.2d 979, 981 (5th Cir. 1977) (noting that attorneys can make reasonable inferences from the evidence presented at trial in making their closing arguments).

Cordell provided a letter from Washington Mutual, stating that he had a "great payment history," and testimony from Gary Floyd, which stated that his bank had loaned Cordell money since their house was destroyed, as evidence of his financial stability. However, this does not demonstrate that Pacific's statements were misrepresentations. At best, these statements only show that the evidence presented at trial was conflicting. Accordingly, we find no error.

*3. Cordell's Financial Documentation and the Motion to Compel*

Cordell argues that Pacific, during its closing argument, misrepresented that it had to file a motion to compel to obtain Cordell's financial records. Cordell

9

claims that this was a misrepresentation because he provided numerous financial documents prior to Pacific's filing of the motion to compel. This argument is groundless. The record explicitly shows that Pacific filed a motion to compel discovery, which the district court granted.

Cordell also claims that Pacific inappropriately instructed Zandmand to present the Cordell's financial situation in a manner favorable to Pacific. Assuming *arguendo* that such conduct would violate Rule 60(b)(3), Cordell has not made any specific allegations to identify the manner he believes that Zandmand misrepresented the evidence. Thus, we find no basis for relief.

E.    *Entry of Judgment*

Cordell argues that Pacific misrepresented itself when it filed for an entry of judgment for its counterclaim because the counterclaim was never mentioned at trial, nor was the counterclaim presented to the jury. Although Cordell frames this argument as an allegation of misrepresentation, Cordell's argument is actually an attempt to argue that the district court committed a legal error in granting Pacific's motion for an entry of judgment. Because a Rule 60(b)(3) motion may not be used to challenge mistakes of law, we find that the district court committed no reversible error.

III.

Cordell has not provided clear and convincing evidence to substantiate his claims. Moreover, he does not demonstrate how Pacific's actions prevented him from fully and fairly presenting his case. Finally, to the extent that Cordell is asserting that he is entitled to relief because of the district court's alleged errors, those arguments fail because they are beyond the scope of Rule 60(b)(3) and should have been raised on direct appeal.

**AFFIRMED.**